## A11A0155. DeLONG v. THE STATE.

(714 SE2d 98)

DILLARD, Judge.

Steve Louis DeLong appeals his convictions for one count of child molestation,[1] two counts of violating Georgia's Controlled Substances Act by distributing a Schedule IV drug,[2] and two counts of influencing witnesses,[3] contending that the evidence was insufficient to sustain his convictions and, alternatively, that his convictions must be reversed in light of testimony regarding the invocation of his right to remain silent. For the reasons noted infra, we conclude that the evidence was sufficient as to DeLong's conviction for child molestation, but insufficient as to his convictions for violating Georgia's Controlled Substances Act and influencing witnesses.

Viewed in the light most favorable to the jury's verdict,[4] the record shows that in September 2005, DeLong and his then-wife, Michelle Hudson, hosted a gathering at their home, which was attended by Hudson's brother, DeLong's sister, and DeLong's young niece, T. C.[5] At some point in the evening, Hudson went to check on T. C. and the couple's own daughter, the two of whom had previously been put to sleep in the same bed. But upon entering the room, Hudson immediately noticed that T. C. was no longer in bed with her daughter. Instead, DeLong had moved T. C. to the bed he shared with Hudson, claiming to have done so after the child wet the other bed. When Hudson was unable to rouse T. C., DeLong explained that he "might have gave her [sic] an Ambien."

At trial, Hudson testified that she was immediately suspicious of the situation and that her concern was heightened due to an incident that occurred only a few months earlier when she discovered DeLong in bed with T. C. and their daughter, all three asleep. On that occasion, Hudson looked beneath the bed sheets and noticed that both T. C. and DeLong's underwear was pulled down and what appeared to be fecal matter on the side of T. C.'s buttocks and on the sheets. When Hudson woke DeLong to question him, T. C. slept through the commotion, and DeLong claimed that he could not remember how he had come to be in such a position. Thus, with this earlier incident in mind, Hudson

---

[1] See OCGA § 16-6-4 (a) (1).

[2] See OCGA § 16-13-28 (a) (33); OCGA § 16-13-30 (b).

[3] See OCGA § 16-10-93 (a).

[4] See, e.g., English v. State, 301 Ga. App. 842, 842 (689 SE2d 130) (2010); Lott v. State, 303 Ga. App. 775, 775 (1) (694 SE2d 698) (2010).

[5] The only indication in the record of T. C.'s age is that she was in the fourth grade at the time of trial. Nevertheless, the jury could deduce through its observation of her testimony and a taped forensic interview that T. C. was well under the age of 16 during the events in question. See Day v. State, 293 Ga. App. 543, 543-44 (667 SE2d 392) (2008).

approached T. C.'s mother (DeLong's sister) at the party after having discovered T. C. in DeLong's bed.

Upon learning of the two incidents, T. C.'s mother and father questioned the child—after she finally awoke from her groggy state—as to whether DeLong had ever touched her between her legs, and the child tearfully responded in the affirmative. Thereafter, T. C.'s parents reported DeLong to the sheriff's department, and T. C. gave a forensic interview. DeLong gave a voluntary statement to the sheriff's office, in which he admitted to giving T. C. Ambien but otherwise denied the molestation allegations. And at some point after the allegations arose, T. C.'s mother contacted the mother of J. F., a friend of DeLong's daughter and T. C., who recalled DeLong giving her a medication that made her sleepy and have bad dreams. DeLong thereafter approached J. F.'s mother and apologized for giving J. F. Ambien, but he denied ever molesting the girl. Subsequently, DeLong was arrested and charged with child molestation based on the incident in which Hudson found DeLong and T. C. in bed with their underwear pulled down, and with distributing a controlled substance to T. C. and to J. F.

Following his arrest, DeLong approached T. C.'s parents and asked them to drop the charges against him, telling them that unless they did so he would sue them for $25,000 and demand that they publish a letter of apology in the local newspaper. T. C.'s mother informed the State of DeLong's threatened lawsuit and inquired as to whether the charges against DeLong could be dropped. An investigator told her that because the State had brought the charges, they could not be dropped. At this point, T. C.'s mother began to cry, explaining that she was "under a lot of pressure to drop [the charges]," and informed the investigator that DeLong was waiting outside in her car. The investigator then took a written statement from T. C.'s mother and arrested DeLong on the spot for influencing witnesses.

Thereafter, DeLong was indicted and tried on charges of child molestation, distributing a controlled substance, and influencing witnesses; and he was found guilty by the jury on all counts. DeLong's motions for directed verdict and new trial were then denied, and he was sentenced to twenty years to serve on the child-molestation count; five years to serve consecutively on both counts of distributing a controlled substance; and five years to serve concurrently on both counts of influencing a witness. This appeal follows.

On appeal from DeLong's criminal convictions, we view the evidence in the light most favorable to the jury's verdict, and DeLong

no longer enjoys a presumption of innocence.[6] We neither weigh the evidence nor assess witness credibility, "which are tasks that fall within the exclusive province" of the jury.[7] With these guiding principles in mind, we will now address each of DeLong's enumerations of error in turn.

1. DeLong first contends that the evidence was insufficient to sustain his conviction for child molestation. We disagree.

Child molestation is committed when a person "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[8] And here, DeLong was charged with committing child molestation with the intent to satisfy his own sexual desires, in that he "did lie in bed with [T. C.] with his underwear pulled down while [T. C.'s] panties were also pulled down." DeLong argues, however, that the evidence against him was insufficient because (1) T. C. did not testify about the incident in question, (2) Hudson did not witness any touching or sexual activity, and (3) there was no elaboration at trial as to what "pulled down" meant. These contentions are wholly without merit.

Hudson's testimony regarding what she observed on the night in question—*i.e.*, that T. C. and DeLong were asleep together with their underwear pulled down and that she saw what appeared to be fecal matter smeared on T. C.'s buttocks and the bed sheets—was sufficient for the jury to conclude that T. C. and DeLong's otherwise inexplicable mutual exposure was for the purpose of satisfying DeLong's own sexual desires.[9] Indeed, the mere exposure of sexual organs to a child is sufficient evidence of child molestation, and neither physical contact with the child nor the child's actual sight of the sexual organs is required.[10] Moreover, "[i]ntent is a question of fact to be determined upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[11]

---

[6] *See, e.g., English*, 301 Ga. App. at 842; *Lott*, 303 Ga. App. at 775 (1).

[7] *Snell v. State*, 306 Ga. App. 651, 652 (1) (703 SE2d 93) (2010).

[8] OCGA § 16-6-4 (a) (1).

[9] *See Rainey v. State*, 261 Ga. App. 888, 889-90 (1) (584 SE2d 13) (2003) (holding that defendant's exposure of privates to child from approximately 200 feet away was sufficient to sustain conviction for child molestation).

[10] *See, e.g., Rainey*, 261 Ga. App. at 889 (1); *see also Wormley v. State*, 255 Ga. App. 347, 348 (565 SE2d 530) (2002) (affirming conviction for child molestation despite contention that victims "did not know that [the defendant] was naked or had an erection while he was touching them").

[11] *Andrew v. State*, 216 Ga. App. 427, 427 (454 SE2d 542) (1995) (citation and punctuation omitted) (further noting that this Court has held that it can be "inferred from the fact that the defendant exposed himself to a child that he had the intent to arouse or satisfy his sexual desires"); *see also* OCGA § 16-2-6 ("A person will not be presumed to act with criminal

Accordingly, the jury was presented with sufficient evidence to find DeLong guilty of child molestation.

2. DeLong next contends that the evidence was insufficient to sustain his convictions for distributing a controlled substance. Despite DeLong's own admission that he distributed Ambien to T. C. and to J. F., we are constrained to agree that the State failed to meet its burden of proof on these two counts.

The Georgia Controlled Substances Act makes it unlawful for "any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance,"[12] and the State Board of Pharmacy determines which substances are enumerated in the statute's schedules of controlled substances pursuant to the procedures in Georgia's Administrative Procedure Act.[13] Furthermore, controlled substances are included in the various schedules "by whatever official, common, usual, chemical, or trade name designated."[14] For example, Schedule IV lists Zolpidem as a controlled substance.[15] And in the case sub judice, DeLong was charged with two counts of violating the Controlled Substances Act by distributing "[Z]olpidem, a controlled substance commonly known as Ambien[,]" to T. C. and to J. F.

On appeal, DeLong contends that the State failed to prove that he violated the Controlled Substances Act because while Zolpidem is listed as a controlled substance, Ambien is not,[16] and there was no testimony or physical evidence presented by the State at trial linking Ambien to Zolpidem. We are constrained to agree because although the trial court and the prosecutor both informed the jury that they would refer to Zolpidem by its trade name, Ambien,[17] these statements do not cure the defect in the State having failed to present

---

intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."); *Chapman v. State*, 170 Ga. App. 779, 780 (1) (318 SE2d 213) (1984) (holding that there was "ample support for a finding that the conduct manifested by [the defendant] was contrary to conscience, or moral law, and was inimical to public welfare according to the standards of society as perceived by the jury" when he entered the room of the child victim as she slept, locked the door, and pulled up her shirt).

[12] OCGA § 16-13-30 (b); *see also* OCGA § 16-13-21 (providing definitions).

[13] OCGA § 16-13-22 (a); *see also* OCGA §§ 50-13-1 to -23 (*general provisions* of Georgia's Administrative Procedure Act). *See generally* OCGA § 50-13-8 ("The courts shall take judicial notice of any rule which has become effective pursuant to [the Georgia Administrative Procedure Act]."); *Bailey v. State*, 259 Ga. App. 293, 294 (1) (576 SE2d 668) (2003) ("Under the provisions of the Administrative Procedure Act, we take judicial notice of the rules promulgated by the State Board of Pharmacy." (footnote omitted)).

[14] OCGA § 16-13-23.

[15] OCGA § 16-13-28 (a) (33).

[16] *See* OCGA § 16-13-28.

[17] The trial court did so when speaking to the jury after voir dire but before it had been sworn in to consider the case, and the prosecutor did so during opening statements.

*evidence* linking Ambien to Zolpidem, and nothing in the record indicates that there was an agreement by the parties to a stipulation of same.[18] Thus, while the State presented evidence that DeLong admitted to distributing Ambien to both T. C. and J. F. and produced testimony that "Ambien" is a Schedule IV controlled substance, our well-established case law *explicitly* required the State to identify "Ambien" as a trade name for Zolpidem through admissible evidence.[19]

Specifically, this Court has previously held that the trade name of a statutorily designated controlled substance is not the proper subject of judicial notice;[20] and because there was absolutely no testimony or physical evidence presented by the State that Ambien is the trade name for Zolpidem, we are constrained to reverse DeLong's convictions on these two counts because the State "failed to carry its burden of proving by competent evidence that the drug [Ambien is] . . . regulated by law."[21]

While we fully recognize the seeming absurdity of the outcome in this case (in light of DeLong's admission that he gave both children

---

[18] *See, e.g., State v. Carter*, 305 Ga. App. 814, 817 n.15 (1) (701 SE2d 209) (2010) ("[S]tatements of counsel are not evidence, and there is no evidence that the State stipulated to such factual assertions." (citation omitted)); *see also Raby v. State*, 274 Ga. App. 665, 666 (1) (618 SE2d 704) (2005) ("While parties may agree to stipulate facts in criminal cases, the trier of fact must be informed of the stipulated facts." (citations omitted)); *Sanders v. State*, 252 Ga. App. 609, 613 (2) (556 SE2d 505) (2001) ("Parties may agree to stipulate to facts in criminal and civil cases. Stipulation should be in writing or made on the record." (citation and punctuation omitted)); *Dryer v. State*, 205 Ga. App. 671, 673 (423 SE2d 297) (1992) ("Such an express stipulation should generally be made in writing or in open court." (citation omitted)). *See generally Elrod v. State*, 143 Ga. App. 331, 331 (2) (238 SE2d 291) (1977) (holding that "pharmacist's conclusion that 'Demerol' is a Class II narcotic has no probative value" because Demerol, a trade name, is not listed as a controlled substance).

[19] *See Elrod*, 143 Ga. App. at 331 (2) (reversing conviction when testimony referred to drug's trade name without evidence linking that name to the listed controlled substance because "[i]n the absence of a specific designation of the drug Demerol, . . . the courts cannot 'notice' whether a certain substance falls within the prohibitive scope of a broad category of drugs" (citation and punctuation omitted)); *see also Tant v. State*, 247 Ga. 264, 266 n.1 (275 SE2d 312) (1981) (citing to *Elrod* for the proposition that "the generic equivalent of a trade name is not the proper subject of judicial notice" and holding that "the testimony as to the trade name, Quaaludes, . . . was sufficiently connected with the generic equivalent, methaqualone, by the description of the pills, or tablets, by the witnesses and by the crime lab report"); *Hulsey v. State*, 220 Ga. App. 64, 64-65 (467 SE2d 610) (1996) (holding that State sufficiently linked trade name to controlled substance); *Crosby v. State*, 150 Ga. App. 804, 805 (4) (258 SE2d 593) (1979) (distinguishing *Elrod* and holding that State met burden of proof through testimony using controlled substance's name as listed in Act). *See generally Kessinger v. State*, 298 Ga. App. 479, 480 (1) (680 SE2d 546) (2009) (holding that State presented sufficient evidence for jury to determine that drugs were oxycodone, a controlled substance, when "pills were contained in a prescription bottle labeled oxycodone, and there was testimony from two experienced witnesses qualified as experts in drug identification that . . . pills' logo matched that of pharmaceutically prepared oxycodone tablets").

[20] *See supra* note 19.

[21] *Elrod*, 143 Ga. App. at 331 (2); *see also supra* note 19.

Ambien and the fact that Zolpidem and Ambien are in fact one and the same[22]), the State's prosecutor could have easily avoided this inexcusable result by simply asking one more question of the investigator who identified "Ambien" as a Schedule IV Controlled Substance[23] or by introducing physical evidence linking the trade name "Ambien" to its statutorily listed equivalent, Zolpidem.[24] But in the absence of such evidence, our case law demands that we reverse DeLong's convictions for violating the Controlled Substances Act.[25]

3. DeLong further contends that the State failed to prove that he was guilty of influencing witnesses because threatening to file a lawsuit does not fall within the ambit of this statutory offense. Once again, we are constrained to reverse.

While it is unlawful to communicate, either directly or indirectly, "any threat of injury or damage to the person, property, or employment" of a witness "with [the] intent to deter a witness from testifying freely, fully, and truthfully,"[26] we cannot say that threatening to (ostensibly) exercise one's legitimate right to file a lawsuit is encompassed by this statute.[27]

And here, DeLong was charged with two counts of influencing a witness by communicating "a threat of monetary damage" to T. C.'s parents. The testimony at trial dealt *exclusively* with DeLong's threat to file a lawsuit against T. C.'s parents, seeking $25,000 in damages and the publication of an apology letter. But because the mere threat of *potential* monetary damage and public humiliation—the latter of which the State now argues on appeal despite its absence from the indictment[28]—are inextricably inter-

---

[22] *See* Physicians' Desk Reference 121 (62d ed. 2008) (listing "Ambien Tablets" and "Ambien CR Tablets" beneath the entry for Zolpidem Tartrate).

[23] *See Hulsey*, 220 Ga. App. at 64-65 (pharmacist testified that "Darvocet N-100 has propoxyphene and it also has acetaminophen in it" and that "Propoxyphene Napsylate is the generic name" for dextropropoxyphene, *i.e.*, the listed name for the controlled substance).

[24] *See Tant*, 247 Ga. at 266 (2) (evidence included testimony regarding Quaaludes, the admission of seized pills engraved with "Lemmon 714," and the admission of a lab report that indicated the pills were "positive for methaqualone," *i.e.*, the listed name for the controlled substance).

[25] *See Hulsey*, 220 Ga. App. at 66 ("[M]ere proof of a trade name for a controlled substance is insufficient evidence to sustain a conviction under the Georgia Controlled Substances Act." (citing *Elrod*, 143 Ga. App. at 331 (2))).

[26] OCGA § 16-10-93 (a).

[27] *Cf. Markowitz v. Wieland*, 243 Ga. App. 151, 155 (2) (c) (532 SE2d 705) (2000) (holding, in a civil context, that the threat of filing a lawsuit "does not constitute a threat of injury or damage under the statute"); *Rolleston v. Huie*, 198 Ga. App. 49, 51 (2) (400 SE2d 349) (1990) (holding that "it is clear that the mere filing of a lawsuit is not the type of humiliating, insulting or terrifying conduct which will give rise to a claim for the intentional infliction of emotional distress").

[28] *See, e.g., Oglesby v. State*, 243 Ga. 690, 692-93 (3) (256 SE2d 371) (1979) (discussing

twined with DeLong's threat of a lawsuit (which is neither a per se threat to person[29] nor to property[30]), we are constrained to reverse DeLong's conviction on these two counts.

In so holding, we are cognizant that "consistent with principles of due process, statutes defining the elements of crimes especially ought to be afforded their plain meaning."[31] And in this respect, we note the dissimilarity between the threat of filing a lawsuit in the case sub judice[32] and the threats to persons and property we have previously found to be encompassed by the statute in question.[33] Furthermore,

---

fatal variances between indictments and the proof offered at trial).

[29] "Person" is defined in our criminal code as "an individual, a public or private corporation, an incorporated association, government, government agency, partnership, or unincorporated association." OCGA § 16-1-3 (12). We note that the State does *not* argue that DeLong either directly or indirectly threatened his sister's person by accompanying her to the District Attorney's office. And although there was testimony that his sister cried when informed that the charges could not be dropped, we cannot sustain DeLong's convictions on any purported physical threat because DeLong was not so charged in the indictment. *See, e.g.*, *Skaggs-Ferrell v. State*, 287 Ga. App. 872, 877-78 (652 SE2d 891) (2007) ("If there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment, then the conviction is defective because of a fatal variance between the proof at trial and the indictment returned by the grand jury." (footnote omitted)); *Simmons v. State*, 284 Ga. App. 561, 568 (1) (644 SE2d 434) (2007) ("[A]llegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and . . . the allegations must be adequate to protect the accused against another prosecution for the same offense."). Additionally, there was no testimony that DeLong made a direct or indirect threat of physical harm to his sister's person. Indeed, DeLong's sister testified that, "[DeLong] came to the house and asked would we drop the charges. And I told him, I guess – I didn't know if we could or not. And he said that we could go talk to the D.A.'s office. And I told him I wasn't going up there by myself; that he would have to go with me."

[30] "Property" is defined in the criminal code as "anything of value, including but not limited to real estate, tangible and intangible personal property, contract rights, services, choses in action, and other interests in or claims to wealth, admission or transportation tickets, captured or domestic animals, food and drink, and electric and other power." OCGA § 16-1-3 (13).

[31] *Harrison v. State*, 309 Ga. App. 454 (711 SE2d 35) (2011) (citation omitted).

[32] We leave for another day the question of whether the explicit threat of filing a clearly frivolous lawsuit possibly falls within the ambit of the statute.

[33] *Compare Palmer v. State*, 299 Ga. App. 192, 193-94 (3), (5) (682 SE2d 323) (2009) (holding that State presented sufficient evidence to support convictions for threatening a witness in a civil proceeding and for influencing a witness when defendant went to witness's house, threatened with eviction, and burned husband's car); *Shelnutt v. State*, 289 Ga. App. 528, 532-34 (3), (5) (657 SE2d 611) (2008) (same); *Johnson v. State*, 277 Ga. App. 499, 505-07 (2) (627 SE2d 116) (2006) (sufficient evidence of threat when defendant made extended face-to-face contact with witness and witness testified about, *inter alia*, gang's code of silence and consequences for violating same); *Carter v. State*, 237 Ga. App. 703, 707-09 (3) (516 SE2d 556) (1999) (sufficient evidence of threat when defendant threatened to kill one witness and then made a menacing appearance at another's home); *Thomas v. State*, 227 Ga. App. 469, 470 (3) (489 SE2d 561) (1997) (sufficient evidence of threat to witness when defendant "shouted and pounded on the doors and windows trying to enter the victim's house"); *Gonzalez v. State*, 175 Ga. App. 184, 184-86 (1)-(6) (332 SE2d 904) (1985) (sufficient evidence of threat to witness when defendant made sinister comments in court and State presented a pistol seized and documents showing plan for "protection" in organized cocaine distribution).

"[a]ll statutes are presumed to be enacted with full knowledge of existing law[,] and their meaning and effect [are] to be determined with reference to the constitution as well as other statutes and decisions of the courts."[34] Thus, even assuming arguendo that the threat of filing a lawsuit (and its attendant potential consequences) was sufficient to support a conviction for influencing a witness, we have grave reservations as to whether such a law could be upheld under the Georgia or United States Constitutions.[35]

4. Finally, DeLong argues that his convictions must be reversed because of a reference by a State witness to the invocation of his Fifth Amendment right to remain silent.[36] We disagree.

At trial, while questioning the investigator who arrested DeLong for influencing witnesses, the State inquired as to whether the investigator had "any other contact" with DeLong during the case. In response, the investigator explained that DeLong was taken to jail and that, when the investigator went to speak with DeLong about the case and advise him of his rights, DeLong said that he did not wish to make a statement at that time. Upon hearing this testimony, DeLong's counsel immediately objected, and the jury was removed from the courtroom. The trial court subsequently denied DeLong's motion for a mistrial but thereafter instructed the jury to disregard the question and answer entirely, informed the jury that DeLong had the right to not make a statement, and warned the jury not to use the information in any way during its deliberations as to his guilt or innocence. DeLong now argues that the trial court's denial of his motion for mistrial was in error because the admission of this testimony was harmful and highlighted his failure to testify.

At the outset, we note that "[t]he decision to deny a mistrial is within the trial court's discretion, and we will not reverse it unless the grant of a mistrial is necessary to preserve the right to a fair trial."[37] And while DeLong is correct that "[t]he fact that a defendant exercised his right to remain silent may not be used against him at trial,"[38] a reference to the invocation of this right will not always

---

[34] *Higdon v. City of Senoia*, 273 Ga. 83, 86 (3) (538 SE2d 39) (2000) (citation omitted).

[35] *See, e.g.*, U.S. Const. amend. I (protecting the right of freedom of speech); U.S. Const. amend. VII (protecting the right to trial by jury in civil proceedings); Ga. Const. art. I, § 1, ¶ XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state."); Ga. Const. art. I, § 1, ¶ V ("No law shall be passed to curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish sentiments on all subjects but shall be responsible for the abuse of that liberty.").

[36] *See* U.S. Const. amend. V.

[37] *McCain v. State*, 292 Ga. App. 886, 887 (665 SE2d 912) (2008) (footnote and punctuation omitted).

[38] *Hardy v. State*, 301 Ga. App. 115, 116 (2) (686 SE2d 789) (2009).

result in reversal. Indeed, "if the testimony concerning remaining silent is made during a narrative on the part of the authorities of a course of events and apparently was not intended to, nor did it have the effect of, being probative on the guilt or innocence of the defendant[,] it is not prejudicial."[39] And here, the reference to DeLong's invocation of the right to remain silent was not directed to a particular statement or defense offered by DeLong, was made during a narrative explanation, and was promptly addressed with a thorough curative instruction by the trial court to the jury. Therefore, the trial court committed no error in denying DeLong's motion for mistrial.[40]

Accordingly, for all the foregoing reasons, we affirm DeLong's conviction for child molestation, reverse DeLong's convictions for distributing a controlled substance and influencing witnesses, and remand this case to the trial court for resentencing consistent with this opinion.

*Judgment affirmed in part and reversed in part, and case remanded for resentencing. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 6, 2011.

*Robert L. Persse*, for appellant.
*Richard A. Mallard, District Attorney, Brian A. Deal, Assistant District Attorney*, for appellee.

---

[39] *Id.* at 116 (2).

[40] *See Whitaker v. State*, 283 Ga. 521, 524-25 (3) (661 SE2d 557) (2008) (holding that, under similar circumstances, "it was not an abuse of the trial court's discretion to refuse to grant a mistrial"); *Parks v. State*, 281 Ga. App. 679, 681 (2) (637 SE2d 46) (2006) (same). *Compare Clark v. State*, 237 Ga. 901, 902 (230 SE2d 277) (1976) (holding that trial court erred in not granting mistrial when State extensively questioned defendant about failure to inform officers of his alibi defense); *Gordon v. State*, 250 Ga. App. 80, 83 (550 SE2d 131) (2001) (holding that trial court erred in not granting mistrial when State repeatedly stressed defendant's failure to make a statement to police).