**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**August 29, 2012**

# In the Court of Appeals of Georgia

A12A0961. WOMACK v. THE STATE.

DILLARD, Judge.

Following a trial by jury, Tyrone Womack was convicted of two counts of rape, two counts of false imprisonment, one count of criminal attempt to commit aggravated sodomy, one count of aggravated sodomy, and two counts of aggravated assault. Womack appeals these convictions, arguing that (1) he received ineffective assistance of counsel when his attorney failed to obtain a pre-trial psychiatric evaluation, (2) the trial court erred by denying his motion to suppress pornographic videos which were not linked to the crimes for which Womack was indicted and seized using an insufficient search warrant, and (3) the trial court erred by allowing testimony summarizing the contents of the pornographic videos seized. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record reflects that Womack committed horrific acts of violence against two separate women in 2008 and was subsequently indicted on a score of charges related to these attacks.

Womack's first victim was walking home late one evening in January when Womack stopped and asked if she would like a ride. Once she was in his vehicle, Womack questioned the woman as to what she would do to make some money, at which point she offered to perform sexual acts. When the two reached a secluded area, the woman demanded to be paid up front, but Womack refused, punched the victim, and instructed that she would do exactly what she was told to do.

From that point on, Womack's first victim was subjected to a vicious attack that lasted hours and took place in various locations as Womack drove his van from Dekalb County to Gwinnett County.[2] Womack vaginally raped her after attempting anal sodomy. At times the victim's hands were bound by the laces from her shoes, and Womack told her about his indecision as to what he should do with her, suggesting at some points that he should take her "into the woods"—which the victim

---

[1] *See, e.g., DeLong v. State*, 310 Ga. App. 518, 518 (714 SE2d 98) (2011).

[2] This appeal concerns the offenses that took place in Gwinnett County, for which Womack was tried and convicted.

2

understood to mean that she would be killed—or suggesting that he should take her home to become his slave. Instead, Womack eventually released the victim in a grocery store parking lot at 4:00 a.m., and she immediately notified law enforcement about her attack.

Womack was not apprehended until some six months later when his second victim escaped after days of torture. Like the first victim, Womack picked up the second victim by offering her a ride to the store. But rather than going to the store, after the victim accepted the ride, Womack continued to drive and invited the victim to accompany him to use illegal drugs after she asked where they were going. The victim became frightened the further Womack drove but agreed to get high with him nevertheless.

The two eventually arrived at the home of Womack's parents, where he lived in the basement, and as he escorted the victim down to his room, he said, "Welcome to the dungeon." Then, as the victim prepared to use drugs with Womack, he punched her in the face, instructed that she would do as she was told, informed her that she would be staying for "a while," and demanded that she disrobe. Womack threatened that he would not kill her, only make her wish that she was dead, and said that he would hurt her if she did not do as instructed. The victim's hands were then bound

3

with a ripped bed sheet, and she was anally sodomized and vaginally raped as Womack cut her across the buttocks, back, shoulders, and thighs with a serrated knife and punched her in the head with each scream. Womack also burned the victim with lit cigarettes after asking if she had any weapons in her purse, finding a razor blade inside, and instructing her that because she did not tell him about the razor blade, she could choose to be cut with the blade or burned with cigarettes.

The victim was assaulted and hidden in Womack's "dungeon" for two days. Womack first tried to hide her in a crawl space but then attempted to hide her beneath his bed. To do so, he forced the victim to move sixteen two-liter bottles filled with urine, which were hidden under the bed and which he explained had been used by a previous prisoner. But when the victim still could not fit beneath the bed, Womack hid her behind boxes in a corner. At one point, the victim heard Womack's mother come into the basement and ask whether he was "hiding any hoes in here," but the victim did not cry out because Womack had previously warned that she would "be sorry" if she asked for assistance.

The victim's ordeal finally ended when she awoke in the corner and believed herself to be alone. Despite prior warnings by Womack that he might try to trick her into escaping, the victim left the corner clad in only a sheet, made her way to the

garage door, and fled to a neighboring house for help. From there, law enforcement was notified, Womack's vehicle was matched to a description by the first victim, and Womack was eventually taken into custody. Although Womack contended to law enforcement and at trial that both victims consented to the acts performed, he was convicted by a jury of two counts of rape,[3] two counts of false imprisonment,[4] one count of criminal attempt to commit aggravated sodomy,[5] one count of aggravated sodomy,[6] and two counts of aggravated assault.[7] This appeal follows.

---

[3] *See* OCGA § 16-6-1 (a) (1) ("A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will . . . .").

[4] *See* OCGA § 16-5-41 (a) ("A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority.").

[5] *See* OCGA § 16-6-2 (a) (1) ("A person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another."); OCGA § 16-4-1 ("A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime.").

[6] *See* OCGA § 16-6-2 (a) (2) ("A person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person . . . ."). Womack was acquitted on two other counts of aggravated sodomy, which were related to the victims' contentions that Womack forced them to perform oral sex.

[7] *See* OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith . . . any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious

5

At the outset, we note that on appeal of Womack's criminal convictions, "we view the evidence in the light most favorable to the jury's verdict, and [Womack] no longer enjoys a presumption of innocence."[8] And we neither weigh the evidence nor assess witness credibility, "which are tasks that fall within the exclusive province of the jury."[9] With these guiding principles in mind, we turn now to Womack's enumerations of error.

1. Womack first argues that he received ineffective assistance of counsel when his attorney failed to obtain a pre-trial psychiatric evaluation regarding his competency and level of criminal responsibility at the time of the offenses. We disagree.

When reviewing such a claim, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[10] In order to prevail on this enumeration, Womack

---

bodily injury . . . .").

[8] *Delong*, 310 Ga. App. at 519-20.

[9] *Id.* at 520 (punctuation omitted).

[10] *Haygood v. State*, 289 Ga. App. 187, 192 (2) (656 SE2d 541) (2008) (punctuation omitted).

carries the burden of "establishing that his trial defense counsel's performance was deficient and the deficient performance prejudiced his defense."[11] Additionally, he must show that there was a "reasonable probability the result of his trial would have been different but for his defense counsel's unprofessional deficiencies."[12] Womack has failed to meet this burden.

At the motion-for-new-trial hearing, Womack presented the testimony of two medical experts who reviewed his prior medical history (which included a 2006 diagnosis of a lesion on his brain), and who evaluated him after trial and some three years after he was first incarcerated. Those experts expressed serious reservations regarding Womack's competency to stand trial, his intelligence, and his mental health. But the State presented the testimony of Womack's trial counsel and a psychologist who evaluated Womack prior to trial at the request of the court after Womack had an outburst during a bond hearing.

The psychologist who evaluated Womack prior to trial was aware of Womack's prior diagnosis, observed no real issues with Womack, did not see sufficient evidence to deem Womack incompetent or to question his criminal responsibility, and felt that

---

[11] *Coley v. State*, 272 Ga. App. 446, 448 (2) (612 SE2d 608) (2005).

[12] *Id.*

Womack could assist in his defense. As for Womack's trial counsel, he testified that he was appointed after Womack had been deemed competent by the court-ordered pre-trial evaluation, that he understood the conclusions of that evaluation, and that he was aware of Womack's medical history. Trial counsel also observed that Womack had a good memory of the events at issue; was lucid, coherent, able to communicate, and capable of testifying; and was intelligent and involved in the trial by taking notes, helping to locate witnesses, and providing feedback after witnesses testified. In short, trial counsel testified that nothing made him question the determination that Womack was competent to stand trial or made him question Womack's level of criminal responsibility.

When the trial court denied Womack's motion on the claim for ineffective assistance of counsel, the court remarked that Womack was fully engaged during the trial and that his claim was unsupported by evidence. Given the foregoing, the trial court's denial of Womack's ineffective-assistance-of-counsel claim was not clearly erroneous.[13] Accordingly, this enumeration of error is wholly without merit.

_____

[13] *See Whitus v. State*, 287 Ga. 801, 804 (2) (700 SE2d 377) (2010) (holding that counsel was not ineffective when he failed to make a meritless motion for an additional examination of defendant because counsel "believed that the [prior] evaluation was fair and balanced and that he had no reason to disagree and request additional testing"); *Page v. State*, 313 Ga. App. 691, 695 (2) (722 SE2d 408) (2012)

2. Womack next argues that the trial court erred by allowing the State to show the jury two clips of pornography depicting rape because the evidence was not linked to the crimes indicted and was seized using an insufficient warrant. We disagree.

The record reflects that when Womack was interviewed by law enforcement, he disclosed that he "had rape related pornography stored on DVD-Rs in his bedroom," and this information was included in the officer affidavit attached to the application for a search warrant. Thereafter, law enforcement obtained a search warrant to collect this pornography. And pursuant to this search warrant, officers recovered hundreds of DVDs containing more than 5,500 pornographic videos, over 1,500 of which depicted rape and/or bondage. At trial, the State admitted into evidence a hard drive containing 773 of the rape/bondage videos and played for the

("The fact that a psychiatric report was issued after trial does not demonstrate that counsel performed deficiently at the time of trial."); *see also Haygood*, 289 Ga. App. at 192 (2) (a); *Coley*, 272 Ga. App. at 449 (2). *See generally Sims v. State*, 279 Ga. 389, 390 (1) (614 SE2d 73) (2005) ("The constitutional test for competency seeks to determine whether the defendant is capable of understanding the nature and object of the proceedings, whether he comprehends his own condition in reference to such proceedings and whether he is capable of rendering his counsel assistance in providing a proper defense.").

jury two representative videos depicting violent rape.[14] Womack objected to admission of the evidence on the same grounds enumerated on appeal.

(a) As to the first argument, that the evidence was not linked to the crime charged in the indictment, this contention is without merit. As we have previously held, in prosecutions for sexual offenses, "evidence of sexual paraphernalia found in [the] defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity."[15] Pursuant to this rule, "sexually explicit material cannot be introduced merely to show a defendant's interest in sexual activity" but instead can only be admitted "if it can be linked to the crime charged."[16] And here, the relevant pornography depicted scenes of rape and/or bondage, and Womack was indicted for committing the offense of forcible rape, which at points involved binding the victims' hands. Thus, this evidence did not merely show Womack's lustful disposition in

---

[14] The record reflects that most of the videos were commercially produced and created by consenting adults, and they were obtained via pornographic websites.

[15] *Ayers v. State*, 286 Ga. App. 898, 904 (3) (650 SE2d 370) (2007) (punctuation omitted); *see also Simpson v. State*, 271 Ga. 772, 773 (1) (523 SE2d 320) (1999).

[16] *Ayers*, 286 Ga. App. at 904-05 (3) (punctuation omitted); *see also Simpson*, 271 Ga. at 773 (1).

10

general but instead depicted a "lustful disposition toward a particular sexual activity and his bent of mind to engage in that activity."[17] Accordingly, the trial court did not abuse its discretion in admitting the pornography that depicted rape and/or bondage.[18]

(b) As to the second argument, that the pornography was seized using an insufficient warrant, this contention is likewise without merit.

Our Supreme Court has specified that "[a]lthough a warrant cannot leave the determination of what articles fall within its description and are to be seized entirely to the judgment and opinion of the officer executing the warrant, the degree of specificity in the description is flexible and will vary with the circumstances involved."[19] More specifically, the particularity requirement only demands that "the executing officer be able to identify the property sought with reasonable certainty."[20] Additionally,

---

[17] *Ayers*, 286 Ga. App. at 905 (3) (punctuation omitted).

[18] *Id.*

[19] *Reaves v. State*, 284 Ga. 181, 184 (2) (d) (664 SE2d 211) (2008) (punctuation omitted); *see also Henson v. State*, 314 Ga. App. 152, 155 (723 SE2d 456) (2012).

[20] *Reaves*, 284 Ga. at 187 (2) (d) (punctuation omitted); *see also Henson*, 314 Ga. App. at 155.

11

a warrant authorizing the seizure of materials presumptively protected by the First Amendment may not issue based solely on the conclusory allegations of a police officer that the sought after materials are obscene, but instead must be supported by affidavits setting forth specific facts in order that the issuing magistrate may focus searchingly on the question of obscenity.[21]

In the case *sub judice*, the relevant search warrant was issued for the collection of, *inter alia*, "DVDs of Pornography" and specifically "[a]ny records and information related to violations of [OCGA §§]16-5-21, 16-5-41, 16-6-1, 16-6-2, [and] 16-6-22.1."[22] Additionally, the warrant specified that the terms "records" and "information" encompassed "all the foregoing items of evidence in whatever form and by whatever means they may have been created, duplicated, transferred, or stored, including any electrical, electronic, or magnetic form" to include "floppy diskettes, hard disks, CD, CD-ROM, DVD, DVD-Rom," other methods of documentation, and "[a]ny records or information related to Internet based pornography . . . ." Although a warrant permitting a search for "DVDs of pornography," without more, would most

---

[21] *Dobbins v. State*, 262 Ga. 161, 164 (3) (415 SE2d 168) (1992) (per curiam) (punctuation omitted).

[22] These are the code sections for aggravated assault, false imprisonment, rape, sodomy/aggravated sodomy, and sexual battery, respectively.

likely be insufficient,[23] the warrant further specified that officers were to seize records and information related to the sexual and other offenses Womack was alleged to have committed, *i.e.*, aggravated assault, false imprisonment, rape, sodomy/aggravated sodomy, and sexual battery. Accordingly, the trial court did not err by denying Womack's motion to suppress because the search warrant described the property to be seized with reasonable certainty.[24]

---

[23] *See Dobbins*, 262 Ga. at 164 (3) ("[T]he search warrant's description was so open-ended that the warrant was a general warrant in violation of both the U.S. and Georgia Constitutions. The warrant left the determination of what items were likely to be 'of a pornographic nature' entirely to the discretion of the officers executing the warrant and conducting the search."); *see also State v. Kramer*, 260 Ga. App. 546, 548 (2) (580 SE2d 314) (2003) (physical precedent only).

[24] *See Smith v. State*, 274 Ga. App. 106, 110 (3) (616 SE2d 868) (2005) (warrant was sufficient when it permitted seizure of "items evidencing 'child molestation and sexual exploitation of children in violation of OCGA § 16-12-100.2" and was supported by an affidavit describing the sought-after material as being those "involving Child Molestation and Sexual Exploitation of Children including but not limited to pictures, computers, and videos"); *see also Reaves*, 284 Ga. at 184-88 (2) (discussing residual clauses and the resulting specificity of warrants); *Holden v. State*, 202 Ga. App. 558, 561 (2) (b) (414 SE2d 910) (1992) ("[T]he items seized could be used to show the bent of mind of defendant to commit sexual crimes."); *Tyler v. State*, 176 Ga. App. 96, 99 (1) (335 SE2d 691) (1985) ("[T]his court has held that magazines showing natural and unnatural sex acts and other apparent sexual devices and paraphernalia designed for sexual stimulation can have a tendency to show a bent of mind toward similar activity." (punctuation omitted)).

3. Finally, Womack argues that the trial court erred by allowing the testimony of a State's witness who summarized the content of over 700 clips of pornography depicting rape and/or bondage. We disagree.

Over Womack's objections, the trial court permitted the State to tender into evidence a hard drive onto which an investigator for the district attorney's office transferred 773 of the approximately 1,500 clips of rape and/or bondage-related pornography discovered in the evidence recovered from Womack's bedroom, but which were not viewed by the jury. And due to the overwhelming number of these video clips, the trial court also permitted the State to show the jury two representative videos depicting rape, followed by testimony from the investigator that the clips were similar in nature to the other 771 rape/bondage videos on the hard drive. Womack argues on appeal that the trial court erred in overruling his objections to this evidence because it was improper to allow a summary of the voluminous evidence. Again, we disagree.

The record reflects that the hard drive containing the rape/bondage pornography was available to the court and to Womack; that the State made available all 1,500 videos for Womack to view at his convenience and that Womack's counsel had in fact taken the time to view some of the videos; that the two representative clips

14

were previewed by both Womack, the State, and the court outside the jury's presence; that the investigator who testified had actually viewed all 773 videos contained on the hard drive; that the jury was never informed that approximately 1,500 clips were located and was instead only informed of the 773 that the investigator was capable of viewing and transferring prior to trial; and that the collection of rape/bondage pornography was so voluminous that it could not conveniently be examined in court by the jury. Accordingly, the trial court did not abuse its discretion in overruling Womack's objection to permitting a summary of the evidence.[25]

---

[25] *See Bennett v. State*, 292 Ga. App. 382, 383 (665 SE2d 365) (2008) (State used representative sample of pornographic evidence when thousands of images were seized); *Ayers v. State*, 286 Ga. App. 898, 900 (1) (650 SE2d 370) (2007) (same); *see also Jenkins v. Smith*, 244 Ga. App. 541, 543 (2) (535 SE2d 521) (2000) (trial court did not abuse its discretion in refusing to admit summaries of voluminous business records). *Cf. Stewart v. State*, 246 Ga. 70, 73-74 (3) (268 SE2d 906) (1980) ("When pertinent and essential facts can be ascertained only by an examination of a large number of entries in books of account, an auditor or an expert accountant who has made an examination and analysis of the books and figures may testify as a witness and give summarized statements of what the books show as a result of his investigation, provided the books themselves are accessible to the court and the parties." (punctuation omitted)); *Bible v. Somers Const. Co.*, 197 Ga. 761, 761 (2) (30 SE2d 623) (1944); *Cotton v. John W. Eschelman & Sons, Inc.*, 137 Ga. App. 360, 363 (2) (223 SE2d 757) (1976); *Hutcheson v. Am. Machine & Foundry* Co., 129 Ga. App. 602, 603 (2) (200 SE2d 371) (1973). *See generally* Paul S. Milich, "Summary of Voluminous Documents," Courtroom Handbook on Georgia Evidence (2012 ed.) (discussing new OCGA § 24-20-1006 and the pre-2013 Georgia rule regarding the admissibility of summaries of voluminous evidence).

For all the foregoing reasons, we affirm Womack's convictions.

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*