## 49410. HOLLOMAN et al. v. THE STATE.

CLARK, Judge.

This appeal is by three defendants who were convicted of the misdemeanor of malpractice in office while serving as County Commissioners of Jones County from January 1, 1969, through December 31, 1972. The specific offense was the making of a contract for renovation of the county courthouse building on a cost plus basis without awarding such contract to the lowest bidder at public outcry and without advertisement and without making the contractor comply with certain statutory requirements imposed upon contracts made with public boards.

We quote the pertinent provisions of the special presentment entered as a true bill by the grand jury on September 29, 1973, wherein these defendants were charged "with the offense of Malpractice in Office (89-9907) for that the said J. C. Holloman, Corbin C. Roberts, and James C. Balkcom, as members of the County Commissioners of Jones County, Georgia, on 4th day of March, in the year of our Lord Nineteen Hundred and Sixty-nine, in the County aforesaid, did then and there, unlawfully and in the administration and under the color of their individual offices did employ Charles Washburn of Etheridge Bros. Construction Co., Inc. on a basis of cost plus 10% overhead plus 10% profit, to repair, renovate and remodel the Jones County, Georgia Courthouse Building, said accused Commissioners so acting without awarding the contract for said repair, renovation and remodeling to the lowest bidder, at public outcry, before the said Jones County, Georgia Courthouse as provided in § 23-1702 of the Code of Georgia Annotated and its Supplements and without having advertised the letting of said contract of repair, renovation and remodeling as provided by § 23-1703 of the Code of Georgia Annotated and its Supplements and without requiring compliance by the said Contractor thus employed by said accused Commissioners with the provisions of §§ 23-1704, 23-1705 and 23-1706 of the Code of Georgia Annotated and its Supplements and said accused Commissioners did by their action on March 4, 1969, thereby prevent competition in bidding for said

public work as prohibited and provided for in § 23-1710 of the Code of Georgia Annotated and its Supplements and that said actions by said accused Commissioners was [sic] against the public interest, was not justified, required or warranted by the economy of the times and was as a result thereof costly, extravagant and unnecessarily wasteful, all of said conduct on the part of said accused Commissioners being unknown to the Prosecutor until July, 1973, contrary to the laws of said State, the good order, peace and dignity thereof." (R. 3).

The three defendants filed a plea in bar, a plea of the statute of limitation, and a general demurrer, all of which were separately overruled. The trial resulted in a verdict of guilty and the court imposed separate sentences upon each of the defendants. Thereafter a motion for new trial was filed which was later amended. This amended new trial motion was overruled from which judgment the instant appeal was taken.

1. Having concluded that the offense was barred by the statute of limitation, we limit our opinion to that phase.

2. As the crime of malpractice in office is a misdemeanor, the applicable period is two years. Code §§ 27-601, 26-502. If, as contended by appellants, the indictment charges the offense to have been the making of a contract on March 4, 1969, then the two-year period would have expired before the special presentment dated September 29, 1973. The state argues that this statutory bar cannot here be applied for two reasons: (1) the crime was a continuing offense, the contention being that "as long as works, payment or other action was taken by the commissioners under this unlawful arrangement, then the offense continued"; (Brief, p. 8) and (2) there was a tolling period which is specifically covered by the indictment stating that "all of said conduct on the part of said accused Commissioners being unknown to the Prosecutor until July 1973." (R. 3). We are unable to accept either contention.

3. A reading of the indictment shows that the crime with which the defendants were charged occurred on March 4, 1969, when the individual contractor was employed to do the work on a cost plus basis. Such

employment constituted the agreement which was alleged to have been made in violation of the statute. Thus, the indictment spells out the offense in words taken from the original statute to be found at pp. 159, 160, of the Ga. L. 1878-9. This language now appears in Code § 23-1702 and reads: "Whenever it becomes necessary to build or repair any courthouse, jail, bridge, causeway, or other public works in any county, the officer having charge of the roads and revenues and public buildings of such county shall cause the same to be built or repaired by letting out the *contract* therefor to the lowest bidder, at public outcry, before the courthouse door, after having advertised the letting of said *contracts* . . ." (Emphasis supplied.) We have underlined the word "contract" because it is the key word in the statute as well as in the indictment drafted to satisfy the statute.

In short, it was the cost plus contract which the defendants were charged to have made in violation of the statute. Nowhere in the statute is there any reference to "works, payment or other action" and therefore nothing to this effect was included in the indictment. The gravamen of the crime was making the cost-plus contract of March 4, 1969, without compliance with the statutory requirements and not the work that was done thereunder or the payments made during the contractor's performance of his employment agreement. Our view is fortified by the remainder of the indictment since Code Ann. §§ 23-1704, 23-1705 and 23-1706 deal with bond requirements on *contracts* made with public boards and public bodies.

4. Was the limitation statute tolled between March 4, 1969, the date of the making of the illegal employment contract, and July 1973, that being the first time that the district attorney learned of the illegal transaction? The indictment seeks to exclude such possibility by using the language that "all of said conduct on the part of said accused commissioners being unknown to the prosecutor until July 1973." (R. 3).

Our statute provides the limitation does not "run so long as the offender or offense is unknown." Code § 27-601. See also Code Ann. § 26-503 which excludes that period in which "The person committing the crime or

crimes is unknown."

The transcript discloses the work under the contract was begun in 1969 and continued until late 1971 and perhaps into 1972. Since the work was being done at the courthouse the fact of such renovation was obviously known to the public as well as to the county officials having their offices in the courthouse. But our concern must be as to knowledge of the illegal contract which constitutes the crime, not the work of the contractor.

The state contends that such knowledge of the illegality must be possessed by the district attorney, and accordingly placed in the transcript his absence of any information as to the manner in which the contract had been made. The appellants used the county sheriff as their witness and elicited from him testimony as to his awareness of the cost-plus contract. (T. Nov. 26, pp. 47-49). (We will deal hereinafter with two items concerning his testimony, to wit: (1) the fact that it was hearsay and (2) the development by the prosecution that he was not cognizant of the law on county contracts and did not know a contract of this type to be illegal.)

The defendants argue that as the sheriff is the county's chief law enforcement officer, his knowledge is imputable to the state. We are of the opinion that this defense contention must be upheld under the ruling of our court in *Taylor v. State*, 44 Ga. App. 64 (160 SE 667). Headnote 2 of that case reads: "It appearing from undisputed evidence that prior to the expiration of the statutory period in which an indictment for the offense in question could have been found and filed, the offense was known to one whose special duty it was to report it, and such knowledge being imputable to the State and being knowledge of the State in legal contemplation, and the special presentment having been found after the expiration of the statutory period, a prosecution for the offense was barred by the statute of limitations; and the court erred in overruling the motion for a new trial."

The individual involved in the *Taylor* case held a number of official positions, one of which was as deputy sheriff. That portion of the opinion appearing on pages 71 and 72 are applicable to the case at bar.

Parenthetically, we are constrained to comment that the instant case is illustrative of the difficulties confronting lawyers and judges in the trial court who must "shoot from the hip." Here the district attorney sought to rebut the *Taylor* case by calling to the attention of the trial court that "the last appearance of the *Taylor* case, I think, is entirely contrary to the [defense] position." (T. Nov. 26, p. 36). Such confusion is understandable since the report in 44 Ga. App. 64 (160 SE 667) shows the decision to have been rendered December 17, 1931, and that certiorari was granted by the Supreme Court. Also, the later case of *Taylor v. State,* involved the same defendant and a similar offense of bribery of an Atlanta councilman. The subsequent case is reported in 174 Ga. 52 (162 SE 504). A reading of the two cases shows that there were two different indictments even though both involved the same individual and the same offense of bribery but one appeal went to this court and the other appeal was to the Supreme Court.

The *Taylor* decision of our court was accepted by certiorari but our decision as reported in 44 Ga. App. 64 (160 SE 667) continued for stare decisis purposes because the Supreme Court in 175 Ga. 642 (165 SE 733) dismissed its writ of certiorari. That dismissal occurred because at that date the Supreme Court did not have "jurisdiction to entertain, at the instance of the State, a petition for certiorari to the Court of Appeals in a criminal case." That principle of lack of jurisdiction for certiorari in criminal cases was recognized by the same bench contemporaneously in *State v. B'Gos,* 175 Ga. 627 (165 SE 566). The General Assembly has now enacted legislation authorizing certiorari from our court to the Supreme Court in criminal cases. See Ga. L. 1973, pp. 297, 298.

5. Although the sheriff's information was hearsay and would not generally be admissible as evidence, an officer has a duty to investigate breaches of the law that he knows of through hearsay as well as of his personal knowledge. This is demonstrated in search and seizure cases where the officer's affidavit is based on hearsay. *Bostwick v. State,* 124 Ga. App. 113 (182 SE2d 925); *Strauss v. Stynchcombe,* 224 Ga. 859, 864-865 (165 SE2d

302). See also *Peters v. State,* 114 Ga. App. 595, 596 (152 SE2d 647) where this court quoted with approval from United States v. Heitner, 149 F2d 105, 106, that "It is well settled that an arrest may be made upon hearsay evidence; and indeed, the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties."

6. Although the transcript indicates that the sheriff was unaware that the law made such contracts illegal, it is clear that such lack of knowledge is not sufficient. As was said in *York v. Clopton,* 32 Ga. 362, 365, "Ignorance of the law excuses no man, least of all a sheriff—for having undertaken to perform the duties of his office, he must know and perform them at his peril."

7. In view of our ruling on the statute of limitation it is unnecessary for us to consider the remaining enumerations of error.

*Judgment reversed. Bell, C. J., Quillian, J., concur.*

ARGUED MAY 28, 1974 — DECIDED SEPTEMBER 18, 1974 — REHEARING DENIED NOVEMBER 8, 1974.

*Byrd, Groover & Buford, Denmark Groover, Jr., Frank D. Farrar, Jr.,* for appellants.
*Joseph H. Briley, District Attorney,* for appellee.