**THIRD DIVISION
ANDREWS, P. J.,
DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 27, 2013**

# In the Court of Appeals of Georgia

A13A0182. BROWN v. THE STATE.

MCMILLIAN, Judge.

We granted Dwight Brown's application for interlocutory review of the trial court's order denying his motion to quash a second indictment issued against him on the same charges asserted in an earlier indictment. Brown asserts that a pending appeal of the earlier indictment deprived the trial court of jurisdiction to consider the second indictment. He also contests the trial court's denial of his "Motion to Abate and/or Dismiss for State's Deliberate and Improper Use of Disqualified Grand Jurors to Obtain Indictment" and his "General and Special Demurrer to Counts 32 Through 35 of the Indictment." For the reasons set forth below, we affirm the trial court's denial of Brown's motions to quash the indictment and for abatement, but we reverse the trial court's denial of his demurrers as to Counts 32 through 35.

Brown, the former president and CEO of Cobb Electric Membership Corporation ("Cobb EMC"), was first indicted on January 6, 2011 (the "First Indictment"). The trial court quashed the First Indictment on March 24, 2011, because it found that it was not returned in open court as required by Georgia law, and the State appealed (the "First Appeal"). This Court affirmed the trial court's order on March 29, 2012, in *State v. Brown*, 315 Ga. App. 282 (726 SE2d 764) (2012), but the Supreme Court of Georgia granted the State's petition for writ of certiorari and the matter remains pending before that Court. *State v. Brown*, 2013 Ga. LEXIS 99 (decided January 22, 2013).

On July 7, 2011, while the First Appeal was still before this Court, the State obtained a new indictment against Brown (the "Second Indictment"). The appellate record in this case does not contain a copy of the First Indictment; however, according to the trial court, the Second Indictment "contains the same charges as in the First Indictment, but in addition identifies by name many victims age sixty-five or older." These charges include allegations of theft by taking, filing false statements and writing, conspiracy to defraud Cobb County, conspiracy to defraud the Cobb County School District, and violations of the Georgia RICO statute. In addition, the Second Indictment also contains four apparently new counts, Counts 32 through 35,

2

which assert that Brown, individually and in concert with others, violated OCGA §§ 16-10-32 and 16-10-93 by conspiring to file a civil lawsuit against individuals who allegedly cooperated with the State to bring charges against him.

1. Brown moved to quash the Second Indictment, asserting that the pendency of the prior appeal deprived the trial court of jurisdiction to return an indictment charging the same or similar offenses.[1]

The trial court found "no Georgia case in which Defendant's novel jurisdictional defense has been raised and addressed," so the Court relied upon persuasive authority from another state in denying the order. See *Irvin v. State*, 276 Md. 168 (344 A2d 418) (1975). But Brown's jurisdictional argument, in fact, has been raised and addressed by this Court, in *Roberts v. State*, 279 Ga. App. 434 (631 SE2d 480) (2006) ("*Roberts II*"), overruled on other grounds, *DeSouza v. State*, 285 Ga. 201, 202, n. 2 (645 SE2d 684) (2007).[2]

---

[1] Under OCGA § 5-6-45 (a), the filing of a notice of appeal in criminal cases "shall serve as supersedeas in all cases where a sentence of death has been imposed or where the defendant is admitted to bail." Here, Brown was "admitted to bail," and bond was posted.

[2] The trial court's failure to find Georgia law on point is understandable given the parties' somewhat inexplicable failure to cite the *Roberts* case, either below or on appeal, despite its clear application in this case and despite the fact that it expressly distinguishes one of the three principle cases upon which Brown relies.

In that case, Roberts was indicted on June 29, 2001 on charges of child molestation and aggravated child molestation. *Roberts v. State*, 263 Ga. App. 472, 473 (588 SE2d 242) (2003), aff'd, 278 Ga. 610 (604 SE2d 781) (2004) ("*Roberts I*"). Roberts subsequently filed a motion for acquittal as a matter of law on speedy trial grounds pursuant to OCGA § 17-7-170. On October 8, 2002, the trial court denied Roberts' motion for acquittal, id. at 473, and the same month it quashed the indictment after finding that Roberts had not received a statutorily mandated preliminary hearing. *Roberts II*, 279 Ga. App. at 435.

Roberts appealed the denial of his motion for acquittal, but the State apparently did not appeal the order quashing the indictment. Both this Court and the Supreme Court subsequently affirmed the trial court's denial of the motion for acquittal. *Roberts I*, supra. But due to the time required for resolving the matter in both appellate courts, the remittitur was not returned to the trial court until December 2, 2004. *Roberts II*, 279 Ga. App. at 435.

"Meanwhile, in November 2002, after Roberts filed his notice of appeal [and two years before the remittitur was returned], a grand jury indicted [him] a second time for the same offenses." Id. And "[i]n March 2003, Roberts moved to quash the second indictment, arguing that the State could not indict him while the denial of his

4

motion for acquittal was on appeal." Id. Following a hearing in May 2003, the trial court denied the motion, and Roberts again appealed. Id. at 435-436.

In considering Roberts' second appeal, this Court found that

[f]iling a notice of appeal divests the trial court of jurisdiction in some matters, but not in all. In a criminal case, the filing of a notice of appeal merely deprives the trial court of its power to execute the sentence. Generally a trial court may not alter a judgment or order while an appeal of that particular judgment or order is pending before the appellate court, *nor may a trial court initiate proceedings that require a ruling on the exact matter being appealed*.

(Citation and punctuation omitted; emphasis supplied.) Id. at 437 (1). Although a trial court is forbidden from taking actions "that directly affect an issue on appeal[,] . . . such loss of jurisdiction is limited to only those proceedings which either requires a ruling on the matters on appeal or directly or indirectly affect such matters." (Citation and punctuation omitted.) Id. Thus, in a criminal case, "[f]iling a notice of appeal may deprive a court of its power to execute the sentence but it does not supersede every other activity of a trial court." (Citation and footnote omitted.) *Strickland v. State*, 258 Ga. 764, 765-766 (1) (373 SE2d 736) (1988).

5

As the *Roberts* opinion noted, for example, in *Strickland,*[3] the Supreme Court found that the filing of a notice of appeal does not deprive the trial court of jurisdiction to "amend an order denying a plea of former jeopardy, nunc pro tunc, to find the plea dilatory and frivolous," even though the pending appeal involved the same order the court amended. (Punctuation omitted.) 279 Ga. App. at 437 (1). And as *Roberts* further noted,

> [a] trial court also retains jurisdiction to rule on a motion for withdrawal and substitution of defense counsel, *Elrod v. State*, 222 Ga. App. 704, 705 (1) (475 SE2d 710) (1996); to appoint appellate counsel, *Spear v. State*, 271 Ga. App. 845, n. 1 (610 SE2d 642) (2005); to dismiss an appeal and to assist in preparing the record, *State v. James*, 211 Ga. App. 149, 150 (2) (438 SE2d 399) (1993); and to consider the State's petition to nolle prosequi a second indictment after the defendant filed a notice of appeal from the court's former jeopardy ruling on the second indictment. *State v. Lejeune*, 276 Ga. 179, 184-185 (4) (576 SE2d 888) (2003); *Waters v. State*, [174 Ga. App. 438, 439 (1) (330 SE2d 177) (1985)].

Id. Based upon that authority and "considering the peculiar facts and circumstances of [*Roberts*]," this Court concluded that "the trial court did not err in finding that 'the

---

[3] 258 Ga. at 765 (1).

State had the ability to bring the [second] indictment against [Roberts].'" Id. at 437-438.

The real issue, therefore, is whether the return of the Second Indictment required the trial court to issue a ruling on the exact matter being considered in the First Appeal, or whether it directly or indirectly affected such matters. We conclude that it did not. The First Appeal concerns the issue of whether the First Indictment was read in open court as required under Georgia law. The Second Indictment initiated a completely separate prosecution on the same charges,[4] and no contention is raised that the Second Indictment suffered from the same infirmity as the First Indictment. Thus, the trial court's acceptance of the Second Indictment had no effect on the issue of whether the First Indictment was valid, and the trial court thus had jurisdiction to consider the Second Indictment.[5]

---

[4] A prosecution begins with the return of an indictment. OCGA § 16-1-3 (14). See generally *Waters v. State*, 174 Ga. App. at 439 (3) (distinguishing proceedings initiated by first indictment from proceedings initiated by second indictment). Each of the indictments here initiated a separate proceeding in the trial court: the First Indictment initiated Case No. 1190058, and the Second Indictment initiated Case No. 1192482. Ct. of App. Docket for Case Nos. A11A2121 & A13A0182

[5] Accordingly, we find no material distinction between the *Roberts* case and the case before us. Although in *Roberts*, the State did not appeal the order quashing the first indictment, and it did appeal that ruling in this case, we do not find this factor to be determinative. Roberts's appeal sought a ruling that the State was prevented from pursuing the charges against him based upon a speedy trial violation, which, if successful, would have ended the case. Here, the First Appeal seeks to re-instate the

7

The cases Brown cites in support of his argument are factually and procedurally distinguishable as none of them involve two indictments, i. e., two separate proceedings, addressing the same charges in the same court. The cases of *Scroggins v. State*, 288 Ga. 346 (703 SE2d 621) (2010), and *Chambers v. State*, 262 Ga. 200, 201-202 (2) & (3) (415 SE2d 643) (1992), each involved a single proceeding and addressed the trial court's lack of jurisdiction to take further action on the matters pending on appeal in that proceeding.

And the case of *Griffin v. State*, 266 Ga. 115 (464 SE2d 371) (1995),[6] involved two indictments for the same murder in the superior courts of two separate counties. Our Supreme Court first addressed the issue of the counties' concurrent jurisdiction,

---

First Indictment, which, if successful, merely would result in two indictments for the same crimes, making one of the indictments superfluous. In that event, the State could seek an order of nolle prosequi for the "extra" indictment as such an order "may be entered without the consent of the accused at any time prior to the attachment of jeopardy. OCGA § 17-8-3; [Cit.]." *Sanders v. State*, 280 Ga. 780, 782 (1) (631 SE2d 344) (2006) (affirming trial court's consent to nolle prosequi on second of two indictments for murder and related crimes arising out of the death of the same victim). See also *Layman v. State*, 280 Ga. 794, 795 (631 SE2d 107) (2006) (state did not need consent of defendant, who had successfully demurred to first indictment, to obtain an order of nolle prosequi on two subsequent indictments for the same crime, even though further prosecution would be barred if defendant's pending motions to quash the indictments had been granted).

[6] Overruled on other grounds, *Washington v. State*, 276 Ga. 655, 658 (2) (581 SE2d 518) (2003).

holding that the first county to take jurisdiction over the charges retained it, preempting jurisdiction in other counties for all crimes arising out of the same conduct. *Griffin*, 266 Ga. at 115 (1). The Court further found that while an appeal on double jeopardy grounds was pending on the first indictment in the first county, the State, which is considered "a single sovereign" for purposes of double jeopardy could not prosecute Griffin in either county. *Griffin*, 266 Ga. at 116 (1). "To do so would deny Griffin protection from being forced to 'run the gauntlet' a second time before his claim of double jeopardy can be reviewed." (Citations omitted.) Id.

In *Griffin*, therefore, not only were the two indictments filed in different courts, the trial court in the first county had not quashed its indictment; rather, it remained in effect at the time the second indictment was issued in the second county. The Supreme Court ruled that the second county did not have jurisdiction until the first court released its jurisdiction by quashing the first indictment. Moreover, *Griffin* involved a claim of double jeopardy, and the United States Supreme Court has found that

> the rights conferred on a criminal accused by the Double Jeopardy clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence [because the defendant would be] forced to endure a trial that the

9

Double Jeopardy Clause was designed to prohibit. . . . [I]f a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.

(Citations and emphasis omitted.) *Abney v. United States*, 431 U. S. 651, 660- 662 (97 SCt 2034, 52 LE2d 651) (1977). Thus, the appeal in that case stopped any further prosecution until the double jeopardy issue was resolved. No such constitutional concerns are implicated under the facts of this case.

Accordingly, we find under Georgia law that the trial court properly denied Brown's motion to quash.

2. Brown next asserts that the trial court erred in denying his motion in abatement on the ground that the grand jury that issued the Second Indictment contained individuals who were victims of the crimes alleged by the State. The charges against Brown are based on allegations that he

engaged and participated in a pattern of racketeering activity that included, but was not limited to, the theft of millions of dollars from Cobb EMC, the theft of millions of dollars in patronage capital from Cobb EMC's members (including Cobb County and the Cobb County School District), and false statements to conceal these thefts from Cobb EMC's members.

10

Thus, Brown argues that any Cobb EMC member is victim under the State's theory of prosecution and accordingly should be disqualified from considering an indictment against him. And on May 27, 2011, prior to the return of the Second Indictment, Brown filed a "Motion to Challenge the Grand Jury Poll, to Disqualify Grand Jurors and Special Demurrer" asserting that five members of the grand jury were members, customers or patrons of Cobb EMC ("the May 27 motion"). No ruling was issued on the May 27 motion, and Brown reasserted this argument as to four of the grand jurors who voted on his indictment in his motion for abatement filed on August 26, 2011, after the Second Indictment was returned.

But under OCGA § 15-12-137.1, with regard to petit jurors,

[a] member of an electric membership corporation shall not be incompetent, based solely on such membership, to serve as a juror in a case in which the electric membership corporation is a party or is interested; provided, however, that if the judge in such case finds that the nature of the case or that the circumstances surrounding a potential juror's membership in an electric membership corporation may cause a potential juror to have a bias or prejudice for or against the electric membership corporation in that case, the judge may grant a party's motion to disqualify such member for cause.

11

And as the trial court found, "[i]f EMC members may serve as petit jurors in cases involving their EMC, then a fortiori they may serve as grand jurors in such cases." "[T]he law does not require that grand jurors should be impartial and unbiased. In this respect, their position is entirely different from that of petit jurors." (Citation and punctuation omitted) *In re Hensley*, 184 Ga. App. 625, 627 (2) (362 SE2d 432) (1987). See also *Sallie v. State*, 276 Ga. 506, 514 (14) (578 SE2d 444) (2003) ("a person is not disqualified or incompetent to serve as a grand juror by reason of bias or prejudice on his part, by the fact that he has heard or read about the case under investigation or has even formed or expressed an opinion as to the guilt of the accused") (citation and punctuation omitted).

But even if membership in the Cobb EMC could be found sufficient to disqualify a grand juror, that disqualification would not be sufficient to support Brown's motion for abatement. Our courts distinguish between challenges to the qualification of a grand juror that "render the juror disqualified to serve as such in any case," i. e., disqualification "propter defectum," and challenges "that disqualify him only in the case involved," i. e., disqualification "propter affectum." (Citations omitted.) *Farrar v. State*, 187 Ga. 401, 403 (1) (200 SE 803) (1939). And the latter provides no ground for a plea in abatement, *Williams v. State*, 107 Ga. App. 794 (131

12

SE2d 567) (1963), or to otherwise support the dismissal of the charges. *Atkinson v. State*, 263 Ga. App. 274 (587 SE2d 332) (2003) (disqualification based on degree of relationship not a ground for quashing the indictment); *Bolds v. State*, 195 Ga. App. 586 (394 SE2d 593) (1990) (such disqualification is not a viable ground for quashing the indictment).

We agree with the trial court that Brown's challenge to the grand jurors in this case clearly alleges a disqualification propter affectum, and thus the trial court properly denied Brown's motion in abatement. See *Clackum v. State*, 55 Ga. App. 44, 47 (189 SE 397) (1936) (challenge to grand jurors on the ground that they were employees of the company that contributed to a fund for the prosecution of the charges against the defendant alleged a disqualification propter affectum, and thus did not support defendant's motion to quash indictment or a plea in abatement).

Brown asserts that these cases are distinguishable, however, because he filed the May 27 motion prior to the indictment to alert the district attorney that the grand jury pool contained Cobb EMC members, and the district attorney failed to remove them.[7] But the earlier motion also alleged a disqualification propter affectum, and

---

[7] As the trial court noted, however, the district attorney is not authorized to summarily exclude Cobb EMC members from the grand jury. See *Echols v. State*, 255 Ga. 311, 313 (338 SE2d 259) (1986).

13

thus would not support a dismissal of the charges. And in any event, Brown took no steps to obtain a ruling on his pre-indictment motion. Rather, he waited almost two months after the indictment to reassert the same argument in a motion for abatement,[8] and that motion is the only motion before us. We find, therefore, that the May 27 motion, upon which the trial court never ruled, affords no basis for distinguishing this case from other cases addressing disqualifications propter affectum in post-indictment motions.

3. Brown further argues that the trial court erred in denying his general and special demurrer to Counts 32 to 35 of the indictment. He asserts that the alleged filing of a civil lawsuit against persons cooperating with the prosecution in a criminal case cannot constitute an offense pursuant to OCGA § 16-10-32 or OCGA § 16-10-93.

---

[8] Although the trial court found that he had waived his argument regarding the allegedly disqualified grand jurors by failing to obtain a ruling on the May 27 motion, our Supreme Court recently confirmed that challenges to the composition of a grand jury are timely if filed within ten days after arraignment, unless the time for filing is extended by the court, in accordance with OCGA § 17-7-110. Here, the motion in abatement was filed before Brown waived arraignment ; thus it was timely. *State v. Dempsey*, 290 Ga. 763, 765-766 (1) (727 SE2d 670) (2012) (motion filed prior to arraignment meets the statutory deadline). See also *State v. Shabazz*, 291 Ga. App. 751, 752 (2) (662 SE2d 828) (2008) (where defendant waives arraignment, ten-day period runs from date of waiver).

Brown filed both special and general demurrers to the indictment, and each kind of demurrer presents distinct challenges to an indictment.

> A general demurrer challenges the sufficiency of the substance of an indictment. The true test of the sufficiency of an indictment to withstand a general demurrer is found in the answer to the question: Can the defendant admit the charge as made and still be innocent? If he can, the indictment is fatally defective.

(Citations and punctuation omitted.) *Gavin v. State*, 292 Ga. App. 402, 402-403 (664 SE2d 797) (2008). And the test of the sufficiency of an indictment on special demurrer

> is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

*State v. English*, 276 Ga. 343, 346 (2) (a) (578 SE2d 413) (2003). See also *Cochran v. United States*, 157 U. S. 286, 290 (15 SCt 628, 39 LEd 704) (1895). But "[w]here a defendant challenges the sufficiency of an indictment by the filing of a special demurrer before going to trial, he is entitled to an indictment perfect in form."

15

(Citations and punctuation omitted.) *State v. Grube*, __ Ga. __ (2) (Case No. S12G1565, decided June 3, 2013).

Here, Count 32 of the Second Indictment charges Brown with the offense of influencing witnesses under OCGA § 16-10-93 (a) in that he communicated to potential witnesses a threat of damage to their property with the intent to deter the witnesses from testifying freely, fully and truthfully, by conspiring with the directors of the Cobb EMC to file a lawsuit against persons who allegedly cooperated with the prosecution with regard to his criminal case. Count 33 cites the same conduct to allege a violation under OCGA § 16-10-93 (b) (1) (A), with the intent to influence, delay or prevent the witnesses' testimony in an official proceeding. Count 34 cites the same conduct to support a charge under OCGA § 16-10-32 (b) (4) that Brown with the intent to hinder, delay, prevent or dissuade the witnesses from assisting in a criminal prosecution directly or indirectly threatened, caused, or attempted to cause them economic harm. And Count 35 cites the same conduct in support of a charge under OCGA § 16-10-32 (b) (1) that Brown, with the same intent and threat, sought to prevent them from testifying in an official proceeding.

But this Court has determined that "threatening to (ostensibly) exercise one's legitimate right to file a lawsuit is [not] encompassed by [OCGA § 16-10-93 (a)]"

16

because such a threat is "neither a per se threat to a person nor to property." (Citations omitted.) *DeLong v. State*, 310 Ga. App. 518, 523-524 (3) (714 SE2d 98) (2011). See also *Markowitz v. Wieland*, 243 Ga. App. 151, 155 (2) (c) (532 SE2d 705) (2000) (threat of filing a lawsuit "does not constitute a threat of injury or damage" under OCGA § 16-10-93 (a) so as to constitute a predicate act under Georgia RICO). Cf. *Rolleston v. Huie*, 198 Ga. App. 49, 51 (2) (400 SE2d 349) (1990) ("it is clear that the mere filing of a lawsuit is not the type of humiliating, insulting or terrifying conduct which will give rise to a claim for the intentional infliction of emotional distress" and "[t]he 'threats' associated with institution of a civil action *cannot and do not* constitute duress and are not actionable in tort.") (citation and punctuation omitted; emphasis in original). We conclude that actually exercising one's right to file a lawsuit, or as alleged in this case, conspiring with others to file a lawsuit, in and of itself, does not constitute a "threat" as required to support the crimes under OCGA §§ 16-10-93 (a); 16-10-93 (b) (1) (A); 16-10-32 (b) (1); or 16-10-32 (b) (4) as alleged in Counts 32 to 35.[9]

---

[9] We express no opinion, however, on whether filing a lawsuit, accompanied by some other threat, communication or conduct, could fall within the ambit of these statutes.

17

In denying the demurrers, the trial court relied, in part, upon language in a footnote in *DeLong* "[leaving] for another day the question of whether the explicit threat of filing a clearly frivolous lawsuit possibly falls within the ambit of the statute." 310 Ga. App. at 524, n. 32. The trial court concluded that it could not determine at this stage in the proceedings that the State could not prove that the lawsuit was frivolous. But this case does not involve the threat of a lawsuit. Instead, the lawsuit apparently has been filed, and it is incumbent upon the court hearing that case, not the trial court in this proceeding, to review and determine its merits.

Accordingly, the trial court erred in denying Brown's demurrers to Counts 32 to 35 of the Second Indictment.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Dillard, J., concur.*