**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 22, 2013**

# In the Court of Appeals of Georgia

A13A1370. KENERLY v. THE STATE.

PHIPPS, Chief Judge.

We granted Kevin Kenerly's application for interlocutory review of the trial court's order denying his motion to quash a second indictment issued against him on the same charges asserted in an earlier indictment. Kenerly asserts that a pending appeal of the first indictment deprived the trial court of jurisdiction to accept return of the second indictment. He also contests the trial court's denial of his plea in bar based on the expiration of the statutes of limitation. For the reasons that follow, we affirm.

Kenerly, a former member of the Gwinnett County Board of Commissioners ("BOC"), was first indicted on October 11, 2010. On October 22, 2010, the trial court denied Kenerly's objection challenging the jurisdiction and authority of a Gwinnett

County special purpose grand jury to return an indictment against him. On November 19, 2010, Kenerly filed a Notice of Appeal from the trial court's October 22, 2010 order. On July 6, 2011, this court reversed the trial court's October 22, 2010 order, and held that a special purpose grand jury is not authorized to return a criminal indictment.[1] The state filed a motion for reconsideration, which this court denied on July 27, 2011. On August 1, 2011, the state filed in this court a Notice of Intent to Apply for Certiorari ("NOI"). On August 11, 2011, the state filed in the Supreme Court of Georgia a Petition for Writ of Certiorari; the Supreme Court on March 5, 2012 denied the petition and issued its remittitur. This court issued its remittitur on March 21, 2012.

On August 4, 2011, three days after the state had filed its NOI, the state obtained from a regularly-impaneled grand jury a second indictment against Kenerly. The second indictment contained the same three charges as the charges contained in the first indictment. Both indictments alleged that Kenerly had committed bribery[2]

---

[1] See *Kenerly v. State*, 311 Ga. App. 190 (715 SE2d 688) (2011).

[2] See OCGA § 16-10-2.

(Count 1) and two counts of (failure to make) disclosure of financial interest (Counts 2 and 3).[3]

1. Kenerly's assertion that the pending appeal of the first indictment deprived the trial court of jurisdiction to accept return of the second indictment is without merit. In the trial court, Kenerly moved to quash the second indictment, arguing that "when [he] filed his Notice of Appeal [regarding the first indictment], this [trial court] was divested or deprived of any and all jurisdiction. As such, the Second Indictment, which incidentally charged [him] with the same offenses as the first quashed indictment, against [him] is invalid as it was returned by this [trial court] at a time when it lacked jurisdiction." "Because the issue before us is a question of law, we do not owe deference to the trial court's ruling, and we apply the 'plain legal error' standard of review."[4]

The trial court, in its order denying Kenerly's motion, quoted this court's prior decisions in *Porter v. State*[5] and *Roberts v. State*:[6]

---

[3] See OCGA § 36-67A-2.

[4] *State v. Bachan*, 321 Ga. App. 712 (742 SE2d 526) (2013) (citations and punctuation omitted).

[5] 308 Ga. App. 121 (706 SE2d 620) (2011) (pendency of appeal in the Supreme Court of Georgia did not deprive trial court of jurisdiction to issue order granting an

Not every action by a trial court is barred during the pendency of an appeal. Rather the trial court cannot execute a sentence or entertain proceedings which either require a ruling on the matters on appeal or which directly or indirectly affect such matters.[7] The loss of jurisdiction is limited only to those proceedings which either require a ruling on the matters on appeal or directly or indirectly affect such matter.[8]

The trial court found that the cases Kenerly cited in support of his motion involved post-judgment trial court actions that were "within the bounds of the issues being appealed." The court found that that was not the case here, "as the appeal that led to the ruling [regarding the first indictment] was concerned solely with the statutory authority of a special purpose grand jury," and the trial court's actions in regard to the second indictment were "accepting an indictment from the regularly convened grand jury and causing the same to [be] filed by the Clerk of Court."[9] The

out-of-time appeal).

[6] 279 Ga. App. 434 (631 SE2d 480) (2006), overruled on other grounds, *DeSouza v. State*, 285 Ga. App. 201, 202, n. 2 (645 SE2d 684) (2007).

[7] *Porter*, supra at 122 (1).

[8] *Roberts*, supra at 437 (1).

[9] Immediately after the return of the second indictment, the state's counsel informed Kenerly's counsel that no action would be taken on the second indictment

trial court noted that "[h]ad the State waited for the remittitur to return from the Supreme Court, the statute of limitations would have run on Counts 2 and 3." The trial court concluded that the return of the second indictment "was not a matter which required ruling on the matters on appeal, nor did it directly or indirectly affect such matters."

On appeal, Kenerly continues to assert that the pending appeal of the first indictment deprived the trial court of jurisdiction to accept return of the second indictment. Recently, this court, in *Brown v. State,*[10] addressed the same jurisdictional argument Kenerly raises.[11] In *Brown*, this court relied on *Roberts*[12] and recognized that the filing of a notice of appeal divests the trial court of jurisdiction in some matters,[13] and held: "The real issue . . . is whether the return of the [s]econd [i]ndictment required the trial court to issue a ruling on the exact matter being considered in the [f]irst [a]ppeal, or whether it directly or indirectly affected such

---

until rulings were entered upon the state's motion for reconsideration in the Court of Appeals and subsequent Petition for Certiorari in connection with the first indictment.

[10] _ Ga. App. _ (_ SE2d _) (Case No. A13A0182, decided June 27, 2013).

[11] Id., slip opinion at 3-7 (1).

[12] Supra.

[13] *Brown*, supra at 5 (1).

matters."[14] In *Brown*, the court held that it did not, as the first appeal concerned the validity of the first indictment (whether the first indictment was read in open court as required under Georgia law), whereas the second indictment initiated a completely separate prosecution on the same charges and no contention was raised that the second indictment "suffered from the same infirmity as the First Indictment."[15]

Indeed, in *Roberts*, this court rejected a defendant's argument that a second indictment for the same offenses could not be brought against him when an appeal on the first indictment was pending on the issue of the trial court's denial of his motion for acquittal on statutory speedy trial grounds.[16] The state had informed the trial court that it re-indicted the defendant because the statute of limitation was not tolled while the defendant's appeal concerning the first indictment was pending.[17] And, as in this case, the state did not intend to try the defendant on the second indictment while the appeal concerning the first indictment was pending.[18] We agree with the trial court

---

[14] Id. at 7 (1).

[15] Id.

[16] *Roberts*, supra at 435-438 (1).

[17] Id. at 435.

[18] Id.

that it did not lose jurisdiction to accept the return of the second indictment. The first appeal concerned the issue of whether the first indictment was returned by an authorized body (a special purpose grand jury).[19] The second indictment initiated a completely separate prosecution on the same charges, but no contention was raised that the second indictment "suffered from the same infirmity as the [f]irst [i]ndictment."[20] Thus, the trial court's acceptance of the second indictment did not require a ruling on the matter on appeal or directly or indirectly affect such matter.[21]

2. Kenerly contends that the trial court erred in denying his plea in bar because Counts 1 and 2 of the second indictment were barred by the applicable statutes of limitation, and said applicable statutes of limitation had not been tolled pursuant to OCGA § 17-3-2.[22] We disagree.

---

[19] *Kenerly*, supra.

[20] *Brown*, supra.

[21] See generally *Brown*, supra; *Roberts*, supra 437 (1) ("such loss of jurisdiction is limited to only those proceedings which either require a ruling on the matters on appeal or directly or indirectly affect such matters.") (citation and punctuation omitted).

[22] OCGA § 17-3-2 provides: "The period within which a prosecution must be commenced . . . does not include any period in which: . . . (2) The person committing the crime is unknown or the crime is unknown[.]"

The appellate standard of review for a plea in bar asserting a statute of limitation defense is a de novo review of the issue of laws. As this ruling involves a mixed question of fact and law, we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts.[23]

The second indictment was filed on August 4, 2011. Count 1 pertinently alleged that Kenerly committed bribery[24] (a felony), in that he:

> beginning on 6th day of March, 2007 and having twenty (20) periodic payments ending on the 3rd day of October, 2008, however the payments were unknown to the State until on or about February 4, 2010, did being an elected public official, to wit: a Gwinnett County Commissioner, directly or indirectly receive, accept or agree to receive a thing of value, to wit twenty (20) payments of fifty thousand ($50,000.00) by inducing the reasonable belief that the giving of the thing would influence his performance of an official action, to wit: the payment was suggested and accepted to induce the belief that said Kevin Kenerly would arrange for the purchase of real propety by the Gwinnett County Board of Commissioners to the benefit of David Jenkins. . . .

---

[23] *State v. Campbell*, 295 Ga. App. 856 (673 SE2d 336) (2009) (footnote omitted).

[24] See OCGA §§ 16-10-2; 16-1-3 (5).

Count 2 of the second indictment alleged that Kenerly committed the offense of (failure to make) disclosure of financial interest (a misdemeanor),[25] in that he

> on the 3rd day of May, 2005, however the financial interest was unknown to the State until on or about February 4, 2010, did being a local government official to wit: a Gwinnett County Commissioner, who knew or reasonably should have known he had a financial interest in a business entity, to wit: a partnership with D. G. Jenkins Development Corporation which had a property interest in real property to wit: that property described in Gwinnett County zoning case number RZC-05-019, affected by a rezoning action which that official's local government would have a duty to consider, fail to disclose the nature and extent of such interest, in writing, to the local governing authority of the local government in which the local official is a member.

On May 14, 2012, Kenerly filed a plea in bar, asserting that the applicable statutes of limitation barred prosecution, and were not tolled by OCGA § 17-3-2 (2), because "[a]fter [Kenerly] receives supplemental and complete discovery, he will demonstrate at the evidentiary hearing that a multitude of alleged victims, persons of interest, and/or the prosecution were aware of both the alleged offense[s] and of the alleged offender no later than May 24, 2007." At the hearing on Kenerly's plea in bar,

---

[25] See OCGA §§ 36-67A-2; 36-67A-4.

the parties submitted to the trial court stipulations of facts, which the trial court considered, together with argument of counsel, in entering its judgment.

(a) *Stipulated facts.* The parties stipulated as follows. On or prior to August 3, 2007, the state had actual knowledge of the following. Kenerly was a member of the Gwinnett County BOC, from January 1, 1995 through August 3, 2007. His primary income was earned in real estate acquisition and development. David G. Jenkins was primarily a residential land developer and homebuilder in Gwinnett County, Georgia. Van Stephens was a Senior Assistant County Attorney for Gwinnett County from 1993 through 2007, and was promoted to Chief Assistant County Attorney in 2007. The office of the County Attorney reports directly to the BOC and is the legal advisor and representative of the county; the County Attorney provides administrative legal counsel to county officers including the BOC. The office of the County Attorney reviews all BOC agenda items and represents the County in litigation matters including zoning, contracts and condemnation litigation. The office of the County Attorney is also responsible for representing the county in the purchase or sale of real property, including negotiation and approval of contracts. BOC meetings are public meetings, with published agendas, and meetings are broadcast live on local television and also archived for later viewing.

On or prior to August 3, 2007, the state had actual knowledge of the following. Kenerly and Jenkins had a business relationship; they were involved in real estate transactions in Gwinnett County; and those transactions came before the BOC. As a county commissioner, if Kenerly had a financial interest in a piece of property that was brought before the BOC for rezoning, he was required by law to immediately disclose the nature and extent of his interest, in writing, and disqualify himself from voting on the rezoning action. During the course of Kenerly's 2006 election campaign, a DVD was distributed to voters in Kenerly's district, showing Kenerly gambling in Las Vegas with developers, including Jenkins. The DVD was delivered to a number of local news outlets, which broadcast Kenerly's gambling trip with developers; one news outlet additionally reported that Kenerly had voted favorably toward Jenkins in rezoning matters that Jenkins had brought before the BOC. At a press conference held by the state to announce an unrelated indictment, the state said that it would not, at that time, investigate Kenerly, Jenkins, and the developers. Kenerly was re-elected to his seat on the BOC in 2006, for a fourth four-year term.

(i) *Grayson Highway/Silver Oaks property*. On or prior to August 3, 2007, the following was a matter of public record. In August 2003, Kenerly filed a letter in Zoning Application RZR-03-036, in which D. G. Jenkins Development Corporation

11

was the applicant; in the letter, Kenerly stated that he had a contractual, financial, and potential property interest in the real property, referred to as the "Grayson Highway" or "Silver Oaks" property, affected by that rezoning action. D. G. Jenkins Development Corporation was an entity to which Jenkins was related.

(ii) *Beaver Ruin/Kingston property.* On or prior to August 3, 2007, the following was a matter of public record. In December 2003, Kenerly filed a letter in Zoning Application RZM-03-058, in which D. G. Jenkins Development Corporation was the applicant; in the letter, Kenerly stated that he had a contractual, financial, and potential property interest in the real property, referred to as the "Beaver Ruin" or "Kingston" property, affected by that rezoning action. That action sought to rezone portions of four tax parcels of land to single family homes. In 2005, Zoning Application RZC-05-019, in which D. G. Jenkins Development Corporation was the applicant, rezoned portions of four of the same tax parcels included in the 2003 rezoning application (RZM-03-058), to commercial use.

All of the property subject to both zoning applications (RZM-03-058 and RZC-05-019) was conveyed to Sydney Investments, LLC; the deeds were recorded on April 15, 2004. Deed records showed that David G. Jenkins was the manager of Sydney Investments, LLC. Kenerly did not file a letter indicating that he had a

12

financial interest in Zoning Application RZC-05-019, which had come before the BOC for a vote.

(iii) *Rabbit Hill property.* On November 2, 2005, Jenkins purchased property, referred to as the "Rabbit Hill" property, from a third party for $8,922,130; a warranty deed conveying the property from the third party to D. G. Jenkins Corporation was recorded in the Gwinnett County real estate records. On April 30, 2007, D. G. Jenkins Development Corporation sold the Rabbit Hill property to Sydney Investments, LLC, for $10,390,554. On May 22, 2007, at a public hearing before the BOC, Kenerly made a motion that the BOC purchase the Rabbit Hill property from Jenkins for $16,260,000. Kenerly did not recuse himself or file a letter indicating that he had a potential financial interest in the Rabbit Hill property. Stephens (then the Chief Assistant County Attorney) confirmed that he had met with the seller to approve the price. The BOC passed the motion to purchase the Rabbit Hill property.

On or prior to August 3, 2007, Stephens had actual knowledge that the prior sale value of the Rabbit Hill property was about $8,200,000; Stephens had selected an appraiser who, in April 2007, appraised the estimated fair market value of the property at $16.4 million, and Stephens negotiated the sale of the Rabbit Hill property with Jenkins's attorney.

13

(iv) *Special purpose grand jury*. In September 2009, the district attorney filed a petition to impanel a special purpose grand jury to investigate the acquisition of real property by the Gwinnett County BOC; the trial court granted the petition On or before February 4, 2010, Jenkins executed an immunity agreement with the state whereby he was granted use and transactional immunity in return for his cooperation and testimony regarding his business dealings with Kenerly; the trial court granted both transactional and use immunity to Jenkins. On February 4, 2010 , the state interviewed Jenkins and reviewed documents Jenkins produced during the interview.

Following the February 4, 2010 interview, the state learned the following. Kenerly and Jenkins were involved in a number of real estate transactions in Gwinnett County. Generally, Kenerly would find property, pay earnest money, and place the property under a contract. Kenerly would offer Jenkins the opportunity to develop and build on the property. Per their agreement, Jenkins would develop the property (i.e., grade, curb, pave, etc.), and the two would split the profits (50/50) from the sale of the developed property. Jenkins would then build homes on the developed lots, and keep 100 percent of the profits from the home sales.

Following the February 4, 2010 interview, the state learned the following. With regard to the Beaver Ruin/Kingston property, Kenerly had located the property, paid

14

earnest money, and placed the property under contract contingent on rezoning. Kenerly offered Jenkins 50 percent of the profits from the sale of the residential property if he developed the residential lots. Jenkins would then receive 100 percent of profits from the sale of any homes he built. Kenerly was to receive his portion of the profits upon the sale of the lots and a final calculation. The parties memorialized this agreement in profit participation agreements executed on April 1, 2004. Later, the parties verbally agreed to amend the participation agreements to allow Kenerly to cash out his portion of the profits before the sale of lots and a final calculation. The parties agreed that Kenerly would receive $1 million as his portion of the profits, instead of 50 percent of the profits after the sale of the lots and a final calculation. Kenerly received $1 million in three payments, between April 2006 and August 2006.

Following the February 4, 2010 interview, the state also learned the following. With regard to the the Grayson Highway/Silver Oaks property, Kenerly had located the property, paid earnest money, placed the property under contract contingent on rezoning, offered Jenkins the same deal he had offered with regard to the Beaver Ruin/Kingston property, and memorialized their agreement in a profit participation agreement on February 14, 2002. But in February 2007, Kenerly and Jenkins verbally agreed to amend the participation agreement regarding the Grayson Highway/Silver

15

Oaks property and to allow Kenerly to cash out his portion of the profits before the sale of lots and a final calculation. The parties agreed that Kenerly would receive $1 million as his portion of the profits instead of the 50 percent of the profits after the sale of the lots and a final calculation. From March 6, 2007 to October 3, 2008, Kenerly received 20 monthly payments of $50,000, for a total of $1million.

In 2008 or early 2009, Jenkins stopped making payments related to the Grayson Highway/Silver Oaks property. The Grayson Highway/Silver Oaks property never made a profit. Jenkins testified that the $1 million payment to Kenerly for the Grayson Highway/Silver Oaks property was unrelated to the Rabbit Hill property.

(b) *Bribery.* Under OCGA § 16-10-2 (a) (2), an elected or appointed public official commits the offense of bribery when he "directly or indirectly solicits, receives, accepts, or agrees to receive a thing of value by inducing the reasonable belief that the giving of the thing will influence his or her performance or failure to perform any official action."

16

As to the bribery count, OCGA § 17-3-1 (c)[26] pertinently provides that prosecution for this offense "shall be commenced within four years after the commission of the crime. . . ." In the present case, the state alleged in the August 4, 2011 indictment that the crime was committed beginning March 6, 2007, which the stipulated facts show was when Kenerly received the first of the twenty installment payments totaling $1 million. Based on this date, the bribery charge fell outside the four-year statute of limitation. But OCGA § 17-3-2 (2) provides that "[t]he period within which a prosecution must be commenced . . . does not include any period in which . . . the crime is unknown[.]" The state alleged that the crime was unknown to it until February 2010, when it interviewed Jenkins and reviewed documents he produced. The trial court agreed.

(i) Kenerly contends that "[t]he facts the State alleges it discovered on February 4, 2010, do not serve to toll the statute of limitation." He asserts that "[t]he only new fact that was uncovered during the course of the grand jury investigation was the

---

[26] OCGA § 17-3-1 (c) pertinently provides that prosecution for felonies other than murders, crimes punishable by death or life imprisonment, or certain offenses when DNA evidence is used to establish the identity of the accused, shall be commenced within four years after the commission of the crime.

17

specific amount of money involved in the legitimate business transaction between [him] and [Jenkins]." This assertion is clearly not supported by the record.[27]

After the state, on February 4, 2010, interviewed Jenkins and reviewed documents he produced, the state learned that: (1) in 2007 Jenkins and Kenerly verbally altered the profit-splitting terms of a five-year-old written agreement they had executed with regard to certain (Grayson Highway/Silver Oaks) property; (2) under the new terms, Kenerly would be paid early and receive $1 million for his share of "profits" from the development of the property; (3) the property never made a profit; (4) Jenkins stopped making payment on the property about the same time or soon after he had made the last $50,000 payment to Kenerly; and (5) Jenkins's and Kenerly's oral agreement with regard to the property was made just three months before Kenerly made a motion before the BOC that it purchase from Jenkins other (Rabbit Hill) property at over $7 million more than what Jenkins had paid for this other (Rabbit Hill) property just two years earlier.

Kenerly claims that, in any event, "there is not a single fact in existence that would support a charge of bribery," as Jenkins "swore under oath that the million

---

[27] Contrary to Kenerly's assertion, the state relies not upon allegations, but on facts stipulated by both parties.

18

dollar payment to [Kenerly] for Silver Oaks/Grayson Hwy, was not a bribe." The

existence and execution of an oral agreement for Jenkins to pay Kenerly money, in

relation to Kenerly's motion before the BOC to Jenkins's benefit, is what the state

alleged in the indictment was a violation of the bribery statute. A rational trier of fact

could find from the stipulated facts that despite Jenkins's testimony that his payment

to Kenerly concerning the Grayson Hill/Silver Oaks property was unrelated to the

Rabbit Hill property (in essence, that the money was not given to influence Kenerly's

official action before the BOC regarding the Rabbit Hill property), Kenerly in fact

received, accepted, or agreed to receive $1 million to arrange for the purchase of the

Rabbit Hill property to Jenkins's benefit.[28] And since the existence, execution, and

timing of the agreement were unknown to the state before February 2010, the trial

---

[28] See generally *Beard v. State*, 300 Ga. App. 146, 146-147 (684 SE2d 306) (2009) ("To warrant a conviction on circumstantial evidence, the proved facts need exclude only reasonable hypotheses - not bare possibilities. . . . And questions of reasonableness are generally decided by the jury.") (citation and punctuation omitted); *Nave v. State*, 166 Ga. App. 466, 467 (2) (304 SE2d 491) (1983) (crime of bribery proved despite defendant's denial that he took money to influence the discharge of a legal or public duty); *Slaughter v. State*, 99 Ga. App. 239, 242 (1, 2) (108 SE2d 161) (1959) ("the receiver of a bribe might be convicted although the person who paid the money might have been in fact ignorant that the receiver, in order to do what was requested of him, would have to act in such official capacity as to commit the crime of bribery under the statute.").

court properly ruled that the statute of limitation for bribery was tolled until February 2010.[29]

(ii) Kenerly contends that the statute of limitation was not tolled because "any knowledge out in the public domain via public records, public meetings, news broadcasts and the like, was imputed to the State for statute of limitation purposes," including "knowledge of County Attorney Stephens." According to Kenerly, Stephens knew of the alleged crime because Stephens had negotiated the sale of the Rabbit Hill property from Jenkins to the county, and Stephens knew that Kenerly had moved the BOC to purchase the Rabbit Hill property for substantially more than what Jenkins had paid for the property just two years earlier. But even assuming knowledge of Stephens (who reported directly to the BOC and provided legal counsel to county officers including the BOC) was imputable to the state,[30] Kenerly fails to

---

[29] See OCGA § 17-3-2 (2).

[30] Compare *Lowman v. State*, 204 Ga. App. 655, 656 (420 SE2d 94) (1992) (knowledge of probate judge, as a person with an interest in the offense (perjury), was imputed to the state for purposes of OCGA § 17-3-2 (2)); *Duncan v. State*, 193 Ga. App. 793-794 (389 SE2d 365) (1989) ("The knowledge placed at issue by OCGA § 17-3-2 (2) is the knowledge of the State, which knowledge includes that imputed to the State through the knowledge not only of the prosecution, but also includes the knowledge of someone interested in the prosecution, or injured by the offense. Thus, the knowledge of a victim of a crime or of a law enforcement officer, is imputed to the State.") (citations omitted); *Holloman v. State*, 133 Ga. App. 275, 278 (4) (211

show either that Stephens knew or that information in the public domain revealed that an oral profit-splitting agreement existed between Jenkins and Kenerly that was beneficial to Kenerly and was made three months before Kenerly led the BOC to a vote beneficial to Jenkins, involving (the Rabbit Hill) property in which Kenerly had failed to disclose a financial interest. OCGA § 17-3-2 requires that the state have actual knowledge of a crime; ""[t]he tolling period is not extinguished when the injured party should have known"[31] of the crime. That "actual knowledge" standard was not shown to have been met before February 2010.

(iii) Kenerly contends that "actual knowledge" under OCGA § 17-3-2 (2) means "actual knowledge of a criminal *allegation*." Kenerly points to the Las Vegas DVD that had been disseminated, Kenerly's personal association with Jenkins, public

---

SE2d 312) (1974) (knowledge imputed to the state when "offense was known to one whose special duty it was to report it"; the sheriff is the county's chief law enforcement officer and his knowledge is imputable to the state).

[31] *State v. Campbell*, supra at 858; See *Beasley v. State*, 244 Ga. App. 837-838 (536 SE2d 825) (2000). Compare *State v. Robins*, 296 Ga. App. 437, 439-440 (1) (674 SE2d 615) (2009) (affirming grant of plea in bar to defendants, where evidence showed that a defendant's supervisor was aware of defendant's acts over four years before defendants were indicted, but claims he did not know acts were illegal; court noted that "lack of knowledge of the illegality of the act was not sufficient to toll the limitation period, but rather there must be lack of knowledge of the act itself.") (citation omitted).

records of the land transactions, and the reporting by local media outlets of allegations of corruption by Kenerly. But the cases upon which Kenerly relies do not lead this court to interpret OCGA § 17-3-2 (2) as requiring actual knowledge of a criminal *allegation*, as opposed to actual knowledge of a criminal *act*, in circumstances where the state alleges it did not know that a crime had been committed.

*Royal v. State*,[32] upon which Kenerly relies, supports a conclusion contrary to Kenerly's position. In that case this court, affirming the trial court's denial of a plea in bar asserting that the statute of limitation had expired because the state had actual knowledge of the crimes more than four years before indicting the defendant, held that the statute of limitation did not begin to run on the date that a tipster had reported an act of insurance fraud to an insurer, but rather on the date that an investigator first substantiated the tipster's allegations.[33] Neither does *Jenkins v. State*,[34] support Kenerly's position. In *Jenkins*, the question was not when the victim (the state) acquired actual knowledge of the specific acts constituting the crimes, but rather

---

[32] 314 Ga. App. 20 (723 SE2d 118) (2012).

[33] Id. at 23 (1).

[34] 278 Ga. 598 (604 SE2d 789) (2004).

22

when it had knowledge of the perpetrator's identity.[35] In any event, the Supreme Court of Georgia affirmed the trial court's grant of the defendant's plea in bar on the basis that the statute of limitation had expired and was not tolled for non-murder charges; less than a year after the crimes were committed, the state had actual knowledge of the defendant's identity as a suspect – DNA test results identifying the defendant's DNA on a cigarette butt – but the frequency of the DNA evidence was low, and the district attorney waited until an additional review of existing evidence more firmly identified the defendant before indicting him more than seven years later.[36] And in *State v. Robins*,[37] this court held that a lack of knowledge of the *illegality* of a defendant's act was not sufficient to toll the limitation period; the court explained that "there must be lack of knowledge of the act itself."[38] Here, neither the state nor one whose duty it was to report the crime claimed to not have known what acts constituted the offense of bribery.

---

[35] Id. at 601-602 (1) (A).

[36] Id.; See *State v. Boykin*, 320 Ga. App. 9, 11 (3) (739 SE2d 16) (2013).

[37] Supra.

[38] Id. at 439-440 (1) (citation omitted); see *Holloman*, supra at 280 (6).

Kenerly points out also the district attorney's delay in investigating the allegations of corruption. This court, however, has explained, "under OCGA § 17-3-2 (2), the statute of limitation does not run while the crime or the person who committed the crime is 'unknown' - it does not say 'and could not have been discovered through the exercise of reasonable diligence.'"[39]

Based on the foregoing, the trial did not err in ruling that the tolling exception to the statute of limitation applied to the bribery charge in the 2011 indictment, and that the prosecution for bribery was commenced less than four years after the state discovered the crime in February 2010.[40] Accordingly, the trial court did not err by denying Kenerly's plea in bar on this basis.

(c) *Disclosure of financial interest.* Under OCGA § 36-67A-2,

[a] local government official who knew or reasonably should have known he or she: . . . (2) Has a financial interest in any business entity which has a property interest in any real property affected by a rezoning action which that official's local government will have the duty to consider . . . shall immediately disclose the nature and extent of such

---

[39] *State v. Campbell*, supra (tolling period ended when employer actually learned of crime, not when employer could have discovered crime through the exercise of reasonable diligence) (punctuation and footnote omitted).

[40] See Id.; *Beasley*, supra at 838-840.

24

interest, in writing, to the governing authority of the local government in which the local government official is a member.

As to the disclosure of financial interest count, OCGA § 36-67A-4 provides that "[a]ny person knowingly failing to comply with the requirements of this chapter or violating the provisions of this chapter shall be guilty of a misdemeanor." OCGA § 17-3-1 (e) provides that "[p]rosecution for misdemeanors shall be commenced within two years after the commission of the crime." In the present case, the state alleged in the August 4, 2011 indictment that the crime was committed on May 3, 2005, and the stipulated facts showed that after 2003 Kenerly did not file a letter indicating that he had a financial interest in the 2005 rezoning of the Beaver Ruin/Kingston property. The disclosure of financial interest charge clearly fell outside the two-year statute of limitation. But OCGA § 17-3-2 (2) provides that "[t]he period within which a prosecution must be commenced . . . does not include any period in which . . . the crime is unknown[.]" The state alleged that the crime was unknown to it until February 2010, when it interviewed Jenkins and reviewed documents he produced. The trial court agreed.

Kenerly contends that the statute of limitation was not tolled pursuant to OCGA § 17-3-2 because "the fact that [Stephens] received Kenerly's letter disclosing

25

a financial interest in the Beaver Ruin property in 2003, and then did not receive a letter disclosing a financial interest in the same property in 2005, was . . . imputed to the State." Kenerly claims also that when he left the room during the BOC vote on the 2005 zoning application, he was "signaling that he had a financial interest," and because Stephens was present for the vote and the vote was "broadcast on public television and archived for the public to review," the state had in 2005 actual knowledge of the commission of the alleged crime.

Even assuming Stephens's knowledge was imputable to the state, the record does not show that Kenerly disclosed in the 2003 letter the extent of his interest in the property, as required by OCGA § 36-67A-2. Therefore, Stephens could not have known that Kenerly's reported interest in property in 2003 concerned the same land at issue in the 2005 zoning application. And Kenerly provides no authority which supports his position that his mere absence from the vote on the 2005 zoning application imputed to persons observing the vote, actual knowledge that he had a financial interest in the subject property.[41]

---

[41] See generally *Royal*, supra (statute of limitation did not begin to run on the date that a tipster had reported a crime, but rather on the date that an investigator first substantiated the tipster's allegations).

Based on the foregoing, the trial did not err in ruling that the tolling exception to the statute of limitation applied to the failure to disclose financial interest charge in the 2011 indictment, and that the prosecution for failure to disclose financial interest was commenced less than two years after the state discovered the crime.[42] Accordingly, the trial court did not err by denying Kenerly's plea in bar on this basis.

*Judgment affirmed. Ellington, P. J., and Branch, J., concur in judgment only.*

---

[42] See *Campbell*, supra; *Beasley*, supra.

27